No. 93-432

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

LARRY C. PLAINBULL,

Petitioner and Appellant,

-v-

TRANSAMERICA INSURANCE COMPANY/
DRANEY INFORMATION SERVICE,

Defendant/Employer and Respondent.

APPEAL FROM:    Workers' Compensation Court
                State of Montana
                The Honorable Timothy W. Reardon, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

        Don Edgar Burris, Billings, Montana

        For Respondent:

        James G. Edmiston, III, Billings, Montana

FILED

MAR 1 0 1994

Filed: *Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted on Briefs:    January 13, 1994

Decided:    March 10, 1994

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

The claimant, Larry C. Plainbull (Plainbull), appeals from Findings of Fact, Conclusions of Law, and a Judgment entered by the Workers' Compensation Court in favor of the respondent. We reverse and remand.

The issue on appeal is whether the Workers' Compensation Court correctly interpreted § 39-71-407, MCA (1989).

The facts of this case are straightforward and essentially undisputed. On May 10, 1991, Plainbull was employed as a laborer for Draney Information Service (Draney) on the movie set for "The Irish Story" (later renamed "Far and Away"). Plainbull was cleaning the walls of a train tunnel when a rock or other material hit him in the left eye. Plainbull was initially treated by Draney's on-location registered nurse, Sandie Sharkey-Knox (Sharkey-Knox), who washed out the eye and placed an ointment in it. At that time, Sharkey-Knox saw no abrasions or foreign bodies.

Plainbull's claim for workers' compensation benefits was initially accepted as a medical-only claim and he was paid medical benefits. Respondent Transamerica Insurance Company Draney's insurer, contended that the choroidal rupture in the left eye predated the May 10, 1991 incident, and was thus not a compensable injury.

A hearing on the matter was held on September 22, 1992, and depositions were taken and submitted to the Workers' Compensation Court. The following testimony was before the Workers' Compensation Court and is the basis for its findings and

2

conclusions.

On May 13, 1991, Plainbull saw Stephen R. Shaub, D.O. (Dr. Shaub), who noted that the injury occurred on May 10, 1991, and that Plainbull had experienced pain in the eye since that time. Dr. Shaub diagnosed a corneal abrasion. On May 15, 1991, Plainbull again saw Dr. Shaub, complaining of persistent discomfort in the left eye. Dr. Shaub diagnosed a corneal abrasion with a possible foreign body.

On May 16, 1991, Plainbull saw Muzaffar H. Kirmani, M.D. (Dr. Kirmani), an ophthalmologist, who diagnosed a choroidal rupture with a macular hole. Dr. Kirmani was unable to ascertain the age of the lesion. On June 14, 1991, Dr. Kirmani reported that Plainbull's left eye vision was "compromised secondary to trauma and choroidal rupture with a macular hole and a complete posterior vitreous detachment of the left eye."

On July 2, 1991, Plainbull saw another ophthalmologist, J. Thomas Priddy, M.D. (Dr. Priddy), who also diagnosed a choroidal rupture in the left eye. On August 12, 1991, Dr. Priddy indicated that he was not able to say that the choroidal rupture predated the May 10 injury. In a letter dated January 14, 1992, Dr. Priddy stated that he saw nothing about the injury that suggested it was old. On April 21, 1992, Dr. Priddy indicated that he believed it was possible that Plainbull's injury was caused by the May 10 accident.

On August 6, 1991, Plainbull visited an optometrist, John T. Gingrich, O.D. (Dr. Gingrich), and told Dr. Gingrich that the eye

injury occurred on May 10, 1991. Dr. Gingrich noted a choroidal rupture with macular involvements. However, Dr. Gingrich did not make this diagnosis. He testified that such a diagnosis was outside his field expertise and that the diagnosis was the opinion of Dr. Fishburn, a retinal specialist who practiced in the same office.

At deposition, Dr. Gingrich opined that the May 10 incident did not cause the left eye condition. However, when questioned further on the basis of that opinion, including questioning as to what could cause a choroidal rupture with macular involvements, Dr. Gingrich repeatedly testified that certain questions were "out of the scope of [his] expertise" and "out of [his] range of expertise." Dr. Gingrich also testified that he was "suspicious" as to why Plainbull "waited three months to come in to see me," apparently unaware that Plainbull had been to a number of other doctors. In addition, Dr. Gingrich admitted that all of his comments and opinions regarding the choroidal rupture were based on Dr. Fishburn's opinions and were not his own, as he was clearly outside his area of expertise. He stated he based his opinions regarding the cause of the injury "on the opinion of the expert," Dr. Fishburn.

Various other medical records were submitted to the Workers' Compensation Court. These included a note dated January 18, 1992, by Gary D. Mundy, M.D., indicating that Plainbull had visited the emergency room with complaints of a headache and pain behind the left eye. He noted that Plainbull suffered an eye injury the

4

previous year when he was hit in the left eye with a rock and that Plainbull had suffered from intermittent pain off-and-on since that time. Another note, dated January 21, 1992, by Deniz Tek, M.D., indicated Plainbull had been suffering from recurrent headaches centered about the left eye over the past one and one-half years.

On February 4, 1992, Plainbull went to the emergency room with left eye pain. A July 20, 1992 record from St. Vincent Hospital indicated that Plainbull complained of a headache from an old injury, which occurred when he was hit in the left eye with a rock on May 10, 1991. Plainbull returned to the emergency room on August 5, 1992, again complaining of left eye pain. Plainbull was eventually referred to the Billings Clinic for a neurological examination. This examination took place on October 5, 1992.

The report from this examination indicated that Plainbull had suffered severe head injuries in the mid-1970s and that he underwent a right parietal craniectomy to remove a subdural hematoma in 1974. Roger S. Williams, M.D. (Dr. Williams), summarized that Plainbull had neuralgia and possibly vascular pain in the left orbit in the territory branches of the left external carotid artery. Dr. Williams further stated that the injury could have been caused by the May 10 incident if Plainbull's description of the incident was correct and if his pain did not predate the injury.

On October 18, 1992, records indicate that Plainbull went to the emergency room complaining of pain in the eyes caused when Plainbull was hit in the left eye with a rock.

5

Plainbull presented evidence regarding his vision prior to the May 10 incident. In a firefighter's physical dated June 9, 1988, Plainbull's underlined(uncorrected) left eye visual acuity was 20/40. On May 13, 1991, Dr. Shaub recorded Plainbull's corrected left eye visual acuity at 20/50. On May 16, 1991, Dr. Kirmani recorded the corrected vision to be 20/70. By June 14, 1991, Dr. Kirmani indicated Plainbull's corrected vision was 20/200. On July 2, 1991, Dr. Priddy recorded the corrected vision in the left eye at 20/400. On August 6, 1991, Dr. Gingrich also recorded the corrected left eye vision at 20/400.

Plainbull testified that he did not have any problems or suffer from any injuries to his left eye during the period of time from his last eye examination on January 14, 1989, until the May 10, 1991, incident.

Based on this testimony, the Workers' Compensation Court entered Findings of Fact, Conclusions of Law, and Judgment on July 26, 1993, concluding that § 39-71-407, MCA (1989), required Plainbull to prove that it was medically more probable than not that the injury of May 10, 1991, caused his medical condition and that Plainbull had failed to establish his burden of proof. From those findings, conclusions, and judgment, Plainbull appeals.

Our standard of review relating to conclusions of law is whether the workers' compensation judge's interpretation of the law is correct. Steer, Inc. v. Dep't of Revenue (1990), 245 Mont. 470, 474-75, 803 P.2d 601, 603.

The Workers' Compensation Court determined that Plainbull had

6

failed to carry his burden of proof pursuant to § 39-71-407, MCA (1989), which provides, in pertinent part:

(1) Every insurer is liable for the payment of compensation . . . to an employee of an employer it insures who receives an injury arising out of and in the course of his employment. . . .

(2)(a) An insurer is liable for an injury as defined in 39-71-119 if the claimant establishes it is more probable than not that:

(i) a claimed injury has occurred; or
(ii) a claimed injury aggravated a preexisting condition.

(b) Proof that it was medically possible that a claimed injury occurred or that such claimed injury aggravated a preexisting condition is not sufficient to establish liability.

The claimant must also prove that the work-related injury caused the condition at issue. See Norman v. City of Whitefish (1991), 248 Mont. 490, 812 P.2d 1259; see also Welch v. Am. Mine Services, Inc. (1992), 253 Mont. 76, 831 P.2d 580.

The Workers' Compensation Court found that Plainbull was injured on May 10, 1991, while employed by Draney, and that the injury occurred when Plainbull was cleaning the walls of a train tunnel with a shovel and a marble-sized rock struck him in the eye. The court concluded that "the deteriorating condition of claimant's eye sight seems to indicate an inciting event occurring sometime around the date of injury." The court further concluded, however, that the medical testimony and opinions of the doctors did not support Plainbull's claim for compensation, because Plainbull had not established that it was "medically more probable than not that the accident described by the claimant caused his eye injury."

We hold that the Workers' Compensation Court erred in so

7

concluding and find that Plainbull established his burden of proof with respect to both the occurrence and compensability of the May 10, 1991 injury.

Section 39-71-407, MCA (1989), cited above, requires that Plainbull establish that it is "more probable than not" that a claimed injury has occurred or that a claimed injury aggravated a preexisting condition. In this case, Plainbull contends that an injury occurred on May 10, 1991, which caused his left eye condition and that he had no preexisting condition prior to that time. In fact, the Workers' Compensation Court found that Plainbull had suffered a work-related injury on May 10, 1991. However, the court went on to conclude that the injury was not compensable because Plainbull did not establish that it was medically more probable than not that the injury caused the condition.

Section 39-71-407(2), MCA (1989), does not require that a claimant establish that the injury occurred through medical testimony. Subsection (b) of that statute provides that a medical possibility that a claimed injury occurred is insufficient proof to establish liability. However, nothing in subsection (a) requires a medical opinion as to whether the injury actually occurred or not. Given traditional rules of statutory interpretation, we decline to read the "medical opinion" language of subsection (b) into the burden of proof contained in subsection (a). Under the plain language of the statute, it is not necessary that Plainbull establish that his injury occurred out of and in the course of his

employment, pursuant to § 39-71-407, MCA (1989), through medical testimony. The claimant's burden under § 39-71-407(2)(a), MCA (1989), is met when, with or without medical evidence, he establishes that it is "more probable than not" that his injury occurred out of and in the course of his employment.

In this case, the Workers' Compensation Court concluded that Plainbull had suffered a work-related injury, but also concluded that he did not establish that the work-related injury caused the condition at issue. The court held that medical testimony was required to establish this causal connection, and that the testimony presented by Plainbull did not establish that it was "medically more probable than not" that the injury caused the condition.

Again, there is nothing in the workers' compensation statutes relevant here that requires that the causal connection, which we referred to in Norman, be established through the use of medical testimony. While § 39-71-407(2)(b), MCA (1989), provides, and our prior case law holds, that simply proving, without more, that a causal connection between the injury and condition is "medically possible" is insufficient, (See Viets v. Sweet Grass County (1978), 178 Mont. 337, 583 P.2d 1070; Hash v. Montana Silversmith (1991), 248 Mont. 155, 810 P.2d 1174), we have also held that causation may be established by indirect evidence where medical science is unable to provide definitive proof. See Conway v. Blackfeet Indian Developers, Inc. (1983), 205 Mont. 459, 669 P.2d 225; Hengel v. Pacific Hide & Fur Depot (1986), 224 Mont. 525, 730 P.2d 1163;

9

Moffett v. Bozeman Canning Co. (1933), 95 Mont. 347, 26 P.2d 973.

Under our present statutory scheme, all that the legislature has required of a claimant is that he establish that it is "more probable than not" that his injury or aggravation of a preexisting condition occur out of and in the course of his employment and, implicitly, under the case law, that the injury cause the condition for which he is seeking workers' compensation benefits. Whether the claimant chooses to meet that burden with medical evidence, non-medical evidence or a combination of both, is up to him and, obviously, depends on the facts and circumstances of his particular case, the nature of the claimed injury, and the evidence available.

We emphasize that the burden of proof remains the claimant's. He is entitled to prove his case with whatever probative evidence he chooses or has available. In order that claimants not read into this case more than is intended, we also point out, however, that in most cases, while the occurrence of the injury may be susceptible to proof without medical evidence, the causation of the claimant's condition may very well require medical evidence if the claimant is to successfully meet his burden of proof, especially in the face of contrary medical evidence presented by the carrier. While we will not read into the statute and into claimant's burden to prove causation the requirement that he use medical evidence, neither do we, here, in any manner, eliminate the necessity for such evidence where that sort of evidence is a necessary part of the claimant's case and where, without medical evidence, he will not successfully meet his burden of proof.

10

Applying the above, we review the record of the lower court to determine whether the evidence presented establishes that Plainbull's condition was more probably than not caused by the work-related injury of May 10, 1991.

The Workers' Compensation Court concluded that Plainbull did not establish that the injury caused his condition. Our standard of review of the Workers' Compensation Court decision is to determine whether there is substantial credible evidence to support the findings and conclusions of the court. EBI/Orion Group v. State Comp. Mutual Ins. Fund (1991), 249 Mont. 449, 452, 816 P.2d 1070, 1072.

The Workers' Compensation Court relied entirely on the opinion testimony of Dr. Gingrich, an optometrist, who testified that, to a reasonable degree of medical certainty, the injury of May 10, 1991, did not cause the left eye condition. Dr. Gingrich was unable to give an opinion as to what did cause the left eye condition, and when asked what could cause the diagnosed choroidal rupture with macular involvements, Dr. Gingrich was unable to answer. He repeatedly testified that certain questions were "out of the scope of [his] expertise" and "out of [his] range of expertise." He also admitted that he based his opinions on the opinions of Dr. Fishburn, an ophthalmologist who did not testify.

Two ophthalmologists who examined Plainbull diagnosed a choroidal rupture in the left eye. Dr. Kirmani testified that he was unable to ascertain the age of the injury at the examination on May 16, 1991, but did not testify that the condition predated the

11

May 10 injury. Dr. Kirmani also testified that, initially after the injury, hemorrhaging would appear around the rupture site, but that the hemorrhage would disappear within a few days, and all that would be left would be the rupture itself. He stated that the injury causing the rupture to the eye could have occurred on May 10, 1991.

Dr. Priddy indicated on August 12, 1991, that he was unable to say that the choroidal rupture predated the May 10 injury, but in a letter dated January 14, 1992, stated that he saw nothing about the injury that suggested it was old. In addition, on April 21, 1992, Dr. Priddy indicated that he believed it was possible that Plainbull's injury was caused by the May 10 accident.

In addition, Plainbull testified that he had no eye injuries prior to the May 10 injury. He also presented evidence regarding his vision prior to the May 10 incident. In a firefighter's physical dated June 9, 1988, Plainbull's uncorrected left eye visual acuity was 20/40. Three days after the injury, on May 13, 1991, Dr. Shaub recorded Plainbull's corrected left eye visual acuity at 20/50. Within six days after the injury, the left eye corrected vision was 20/70, and by July 2, 1991, the corrected vision in the left eye was 20/400.

Based on this record, we find that there is not substantial credible evidence to support the Workers' Compensation Court's findings and conclusions that the May 10 injury did not cause Plainbull's condition. The court relied on the opinion of an optometrist who repeatedly testified that he was outside his field

12

of expertise and who admitted that the opinions he gave were not his own. Prior to May 10, 1991, Plainbull had no left eye condition and less than two months after the injury his condition had deteriorated substantially. None of the doctors with expertise in the area testified that the May 10, 1991 injury did not cause Plainbull's condition and, in fact, one of the doctors testified that the injury could have caused the condition. In fact, the Workers' Compensation Court concluded that the deteriorating condition of Plainbull's eye "seem[ed] to indicate an inciting event occurring sometime around the date of injury." Taken together, the medical and non-medical evidence presented in this case proves beyond a medical possibility the causal connection between Plainbull's injury and his condition. Such evidence, in fact, establishes that Plainbull's injury more probably than not caused the condition for which he seeks workers' compensation benefits; that is all that the law requires. Based on this record as a whole, we hold that the Workers' Compensation Court erred in holding Plainbull to a higher standard of proof than that required by the statute and in concluding that the "medically more probable than not" standard must be satisfied to establish a compensable injury. Moreover, we hold that Plainbull satisfied his burden of proof that it was more probable than not that his injury arose out of and in the course of his employment, and that the injury caused the left eye condition.

We note that Plainbull has requested an award of attorney's fees and the statutory twenty percent penalty. Because the

13

Workers' Compensation Court found in favor of the insurer, it never reached those issues. Inasmuch as we are reversing for entry of judgment in favor of Plainbull, we also remand to the Workers' Compensation Court for a determination of whether an award of the penalty and attorney's fees is appropriate and, if so, the amount to be awarded.

Reversed and remanded.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

14

March 10, 1994

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:


DON EDGAR BURRIS
Attorney at Law
P.O. Box 2344
Billings, MT 59103-2344

James G. Edmiston, III
Attorney at Law
P.O. Box 7187
Billings, MT 59103-7187


ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
    Deputy