NO.   94-031

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

HAROLD  DALE  FERGUSON,

Petitioner  and  Respondent,

-v-

AMERICAN  STORES,  d/b/a,  BUTTREY  FOODS,

Insurer,  Employer  and  Appellant.

FILED

JUL   6 1994

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL  FROM:   Workers '  Compensation  Court  State  of  Montana
The  Honorable  Michael  **McCarter,**  Judge
Robert  J.  Campbell,  Hearing  Examiner,  presiding

COUNSEL  OF  RECORD:

For  Appellant:

Sara  R.  Sexe,  Marra,  Wenz,  Johnson  &  Hopkins,  Great
Falls,  Montana

For  Respondent:

Robert  C.  Melcher,  Billings,  Montana

Submitted  on  Briefs:   May  5,  1994

Decided:   July  6,  1994

Filed:

_____
Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

This is an appeal from a Workers' Compensation Court decision entitling claimant to thoracic outlet syndrome surgery and reinstating his total disability benefits. We affirm.

We consider the following issues on appeal:

I.   Did the Workers' Compensation Court err in determining that claimant's current condition was caused by a 1986 injury to his back?

II.   Did the Workers' Compensation Court err in determining that claimant's request for thoracic outlet syndrome surgery was reasonable and necessary?

III. Did the Workers' Compensation Court err in reinstating claimant's temporary total disability benefits?

Harold Dale Ferguson (Ferguson), began his employment with Buttrey Foods Super Market, Havre, Montana, in March of 1986. He started by carrying groceries and later moved to stock clerk. On August 9, 1986, Ferguson was injured when a box of paper towels and toilet paper fell and hit him in the head, neck, and back. While Ferguson returned to work, he testified that his symptoms did not go away. He further testified that they grew worse over time and that he had problems lifting heavier items and working overhead.

Ferguson injured his back again in September of 1989 while he was restacking flour and sugar. Ferguson testified that the problems he had after the 1989 injury were the same as those he had after the 1986 injury.

Ferguson continued to work until December 12, 1991, when his

treating physicians recommended that he stop working. Ferguson filed a petition for hearing in September of 1992 when he and Buttrey Foods could not reach an agreement. During this time he had been receiving temporary total workers' compensation benefits which were subsequently terminated on January 4, 1993. On January 28, 1993, Buttrey Foods fired Ferguson because he had taken too much leave of absence.

A hearing was held on April 26, 1993. Ferguson sought to have his disability benefits reinstated as well as payment for thoracic outlet syndrome surgery recommended by Ferguson's main treating physician but denied by the insurer. Conflicting medical evidence was presented to the Workers' Compensation Court. Included in the opinions of medical personnel was an evaluation by a seven-person Yellowstone Valley Medical Evaluation Panel. After its examination of Ferguson, the panel determined that Ferguson did not need the suggested surgery.

The Workers' Compensation Court issued its findings of fact and conclusions of law on December 15, 1993, granting Ferguson reinstatement of his benefits and payment for the surgery. Buttrey Foods appeals the ruling.

## Standard of Review

We review the Workers' Compensation Court's decision to determine whether it is supported by substantial credible evidence. Plainbull v. Transamerica Insurance (1994), 51 St.Rep. 181. When conflicting evidence is presented, our scope of review will be to establish whether substantial evidence supports the Workers' Compensation Court's decision--not whether evidence may support

3

contrary findings. Smith-Carter v. Amoco Oil (1991), 248 Mont. 505, 813 P.2d 405. Nor will we substitute our judgment for that of the Workers' Compensation Court as to weight of evidence on questions of fact. Mennis v. Anderson Steel Supply (1992), 255 Mont. 180, 841 P.2d 528.

I

Did the Workers' Compensation Court err in determining that claimant's current condition was caused by a 1986 injury to his back?

The Workers' Compensation Court found that a preponderance of evidence existed to show that Ferguson suffered from thoracic outlet syndrome as a result of the 1986 injury and needed the requested surgery. Because of Ferguson's need for surgery, the court determined that he had not been "as far restored as the permanent character of his injuries will permit" and was entitled to reinstatement of temporary total disability benefits. As a result of these determinations, the court concluded that it could not assess Ferguson's entitlement to rehabilitation or permanent partial disability benefits at this time.

Buttrey Foods argues on appeal that the Workers' Compensation Court erred when it determined that the 1986 incident caused Ferguson's current condition. According to Buttrey Foods, the court ignored the preponderance of the medical and occupational evidence which showed that Ferguson's current condition did not stem from the earlier accident.

Ferguson argues that substantial evidence supports the court's decision and, therefore, this Court cannot substitute its judgment

4

for that of the Workers' Compensation Court.

Following Ferguson's 1986 injury he was treated by two chiropractors, first Dr. Pardis, and then Dr. Nolan. Both doctors released Ferguson to return to work without reaching a decision as to maximum healing. Ferguson testified that he did not complain of pain to his superiors at work because they encouraged him not to be like a former injured employee who complained all the time. Depositions from co-workers at Buttrey Foods indicate that Ferguson did tell co-workers that he was experiencing pain.

In addition to the depositions of Ferguson and his wife, several doctors, including Dr. Snider, Dr. Cook, Dr. Kostelecky and Dr. Kobold, who is a thoracic specialist and Ferguson's treating physician since 1991, believed or indicated an opinion based on reasonable probability that Ferguson's current condition stems from the 1986 accident. Buttrey Foods agrees that Dr. Snider and Dr. Kobold are Ferguson's treating physicians. Dr. Snider, an orthopedic surgeon, referred Ferguson to Dr. Kobold who engaged in specific testing to determine whether Ferguson in truth suffered from the thoracic outlet syndrome. The record contains substantial evidence for the court's determination that Ferguson's present condition stems from the 1986 incident. We hold the Workers' Compensation Court did not err in determining claimant's current condition was caused by the 1986 injury to Ferguson's back.


II.

Did the Workers' Compensation Court err in determining that claimant's request for thoracic outlet syndrome surgery was

5

reasonable and necessary?

Dr. Kobold is a thoracic specialist. The tests that he performed on Ferguson were done specifically to determine the need for thoracic surgery. Dr. Kobold testified in his deposition that he felt the surgery was necessary to the improvement of Ferguson's condition.

Although the report of the Yellowstone Medical Panel itself did not recommend thoracic surgery, it indicated that Ferguson's symptoms could possibly be due to thoracic outlet syndrome. It is important to note that the panel of seven doctors on the Yellowstone Medical Panel consisted of an occupational medicine coordinator, a neurologist, a general surgeon, an orthopedist, a psychiatrist, a psychologist, and a vocational rehabilitation specialist--none a thoracic specialist.

The Workers' Compensation Court attached more weight to the evaluation of Dr. Kobold, the thoracic specialist and Ferguson's treating physician, than it did the medical panel. It is clear that a number of the doctors who saw Ferguson indicated that it was medically probable that he suffered from thoracic outlet syndrome. Dr. Snider referred Ferguson to Dr. Kobold with the specific intent that Dr. Kobold determine whether surgery was necessary. Dr. Koboldtestified such surgery was needed and therefore, substantial evidence exists that the Workers' Compensation Court was correct.

We hold that the record clearly indicates that the Workers' Compensation Court did not err in finding the surgery to be reasonable and necessary.

6

III.

Did the Workers' Compensation Court err in reinstating claimant's temporary total disability benefits?

The Workers' Compensation Court determined that while earlier opinions and evidence may have indicated that petitioner had reached maximum healing, Dr. Kobold believed that Ferguson needed surgery in order to obtain relief. Because Ferguson would benefit from surgery, the court determined that he had not been "as far restored as the permanent character of the injuries will permit." Section 39-71-116(19), MCA (1985). The court reinstated the temporary total benefits Ferguson had received during the last portion of December of 1991. On January 4, 1993, the benefits were discontinued. They were subsequently reinstated for a brief period and then stopped again.

Buttrey Foods argues that Ferguson has not proved that a causal connection exists between his current condition and the two incidents that occurred at Buttrey Foods in 1986 and 1989. Further, Buttrey Foods contends that because Ferguson returned to work after both incidents, he has not experienced a loss of wages as required by § 39-71-116(19), MCA (1985) and § 39-71-116(20), MCA (1989), and he is, therefore, not entitled to temporary total disability benefits.

Ferguson argues that it has never been determined that he has reached maximum healing. He contends that without that determination he is entitled to benefits. At the very least, he argues that he is due a review to determine his entitlement to rehabilitation or permanent benefits.

7

Because this question involves an interpretation of a statute we review this issue as to whether the Workers' Compensation Court was correct in its interpretation of the law. Francetich v. State. Compensation Mut. Ins. Fund (1992), 252 Mont. 215, 827 P.2d 1279. The law in effect at the time of injury is the proper law to apply to the case. Crittendon v. Terri's Restaurant & Lounge (1991), 247 Mont. 293, 806 P.2d 534. Because we have determined that substantial evidence exists to show that the 1986 injury is the cause of Ferguson's current problems, we use the 1985 statutes.

Buttrey Foods is correct that in describing temporary total benefits § 39-71-116(19), MCA (1985), means "total loss of wages" precludes receipt of any wages by claimant:

> "Temporary Total Disability" means a condition resulting from an injury as defined in this chapter that results in total loss of wages and exists <u>until the injured worker is as far restored as the permanent character of the injuries will permit.</u> A worker shall be paid temporary total disability benefits during a reasonable period of retraining. Disability shall be supported by a preponderance of medical evidence. (Emphasis added.)

Section 39-71-116(19), MCA (1985); Chagnon v. Tilleman Motor Co. (1993), 259 Mont. 21, 855 P.2d 1002. However, Ferguson did not begin to receive benefits until he stopped working in 1991. He is not now working and has not worked since the end of December 1991.

We have stated that temporary total disability ceases when the workman's physical condition is as far restored as the permanent character of the injuries permit. Sharkey v. Atlantic Richfield Co. (1989), 238 Mont. 159, 777 P.2d 870. Dr. Kobold, Ferguson's treating thoracic specialist, stated in his deposition that he believed that the thoracic surgery would improve Ferguson's

condition. We conclude that the Workers' Compensation Court was correct in concluding that because the surgery was needed and would most likely benefit Ferguson, he was not at the time of the hearing "as far restored as the permanent character of the injuries permit." Therefore, Ferguson is due temporary total disability benefits (up to the statutory maximum of 500 weeks total) until the surgery restores his condition as far as the permanent character of his injuries will permit.

A determination of "maximum healing" must then be made by Ferguson's treating physician and will trigger a reevaluation of the claimant's disability status as either permanently totally disabled or permanently partially disabled. Jaenish v. Super 8 Motel (1991), 248 Mont. 383, 812 P.2d 1241.

We hold that the Workers' Compensation Court was correct in reinstating claimant's temporary total disability benefits.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

9

July 6, 1994

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

Sara R. Sexe, Esq.
Marra, Wenz, Johnson & Hopkins, P.C.
P.O. Box 1525
Great Falls, MT 59403-1525

Robert C. Melcher
Attorney at Law
P.O. Box 2315
Billings, MT 59103

ED SMITH
CLERKOFTHE
SUPREME COURT
STATE OF
MONTANA

BY: _____
                           Deputy