No. 93-378

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

HENRY J. KRAMER,

      Petitioner and Appellant,

  -vs-

EBI COMPANIES, AMERICAN ASPHALT, INC.,

      Defendant, Employer and
        Respondent.



APPEAL FROM:  Montana Workers' Compensation Court,
             The Honorable Timothy Reardon, Judge presiding.


COUNSEL OF RECORD:

      For Appellant:

          Sara R. Sexe; Marra, Wenz, Johnson & Hopkins,
          Great Falls, Montana

      For Respondent:

          Susan J. Rebeck, Attorney at Law, Great Falls,
          Montana


Submitted on Briefs:   May 5, 1994

Decided:   July 12, 1994

Filed:

Chief Justice J.A. Turnage delivered the Opinion of the Court.

Henry J. Kramer (claimant) appeals from a decision of the Workers' Compensation Court of the State of Montana. The court found that claimant was not temporarily or permanently totally disabled as a result of an October 15, 1986 back injury he sustained while working for American Asphalt, Inc. The court further found that claimant's ulcerative colitis was not caused by his 1986 back injury and that he was not entitled to benefits to cover his medical costs associated with the condition. We affirm.

The issues presented on appeal are:

1. Did the Workers' Compensation Court err in finding that claimant was not temporarily totally disabled or permanently totally disabled as a result of his October 15, 1986 industrial accident?

2. Did the Workers' Compensation Court err in finding that claimant was not entitled to medical expenses incurred as a result of his ulcerative colitis?

Claimant was working for American Asphalt, Inc., in Great Falls, Montana, when he injured his back during 1986 and filed a claim for compensation. On October 15 of that year, he and another employee were loading a sump pump, which weighed approximately 100 pounds, into a storage van when his pant leg caught on a pipe. Claimant spun sideways, wrenching his back; he felt pain in his back.

The next day, claimant went to the office of Dr. Quick, his family physician, about his back pain. Dr. Quick x-rayed his back

2

and prescribed medication and physical therapy. On December 26, 1986, Dr. Quick determined that claimant had reached maximum medical improvement of his back condition. He issued a Certificate of Condition that claimant could return to work without restrictions and found no permanent impairment as a result of his industrial injury. Claimant returned to work as a heavy equipment operator and continued work for an additional four years after the industrial injury.

At the time claimant was injured, American Asphalt, Inc. was enrolled under Workers' Compensation Plan II with the EBI Indemnity Company (EBI). EBI accepted liability for the accident and paid compensation and medical benefits to claimant as follows: $1,346.78 for medical benefits and $768.84 for temporary total disability compensation from October 16, 1986, to November 2, 1986.

In 1991 claimant retired, citing ulcerative colitis and low back pain. On April 10, 1992, he filed a second claim for workers' compensation benefits, alleging that his 1986 back injury had become a totally disabling, permanent condition and that his colitis was caused by stress because of his back injury.

EBI and American Asphalt responded by asserting that claimant was not totally disabled and that his colitis was not caused by his 1986 back injury. EBI paid claimant, under a reservation of rights, $5,565.82 ($214.07 per week) for temporary total disability compensation from March 20, 1992, to September 17, 1992, and $149.50 per week permanent partial disability compensation from September 18, 1992, to present.

3

The Workers' Compensation Court found that claimant was not totally disabled and that he failed to prove that his colitis was caused by his 1986 back injury.  Claimant appeals.

## STANDARD OF REVIEW

We review a workers' compensation court's decision to determine whether it is supported by substantial credible evidence. Plainbull v. Transamerica Ins. Co. (Mont. 1994), 870 P.2d 76, 80, 51 St.Rep. 181, 184.  Where conflicting evidence has been presented, we examine whether substantial evidence supports the decision of the workers' compensation court--not whether the evidence might have supported contrary findings.  Smith-Carter v. Amoco Oil Co. (1991), 248 Mont. 505, 510, 813 P.2d 405, 408.

## MEDICAL FACTS

On April 3, 1987, claimant was examined by Dr. Quick and was diagnosed as having signs of colitis.  At this examination claimant did not complain of back pain.  There was no evidence in the medical records that claimant suffered from colitis prior to April 3, 1987.  He was admitted to the hospital on April 30, 1987, for ulcerative colitis and provided an extensive medical history. Nothing in the history indicated that claimant was suffering from back pain.

In April 1991, Dr. Quick advised claimant to stop working because of a combination of his ulcerative colitis and chronic back pain.  Dr. Quick could not relate claimant's colitis to his industrial injury of October 15, 1986.

4

Claimant was examined by Dr. Robert J. Seim on May 13, 1992. After conducting the examination and reviewing claimant's medical history, Dr. Seim stated in his report to EBI:

> He said he simply went along with the back problem and attempted to go back to work in the spring of 1987 in Great Falls. He said he was able to work only occasionally because of his back problem. His pain gradually became increasingly more severe in the next year or so, and the patient states that he was unable to continue working with his back. . . .

> The patient states that he had no significant problems with his back prior to the accident and since that time has had significant problems. . . . [T]here does appear to be a direct causal relationship with his current low back problem and the industrial injury of October 15, 1987 [sic]. . . .

> By history and in talking with Mr. Kramer he claims that he has had virtually only a few days in heavy equipment in Caterpillar operation since the injury. If these be the true facts, then certainly his activity since the accident has not been causative or an aggravating factor.

Possibly Dr. Seim misunderstood the claimant concerning his work history. Following his injury of October 15, 1986, claimant returned to work in approximately two weeks and worked two or three days in the fall of 1986. Claimant continued working primarily as a heavy equipment operator for the years 1987, 1988, 1989, 1990 and until sometime in April of 1991 when he retired from work entirely.

In his deposition taken on September 2, 1992, Dr. Seim, stated:

> Q. . . . Is it your understanding that he only worked a few days after his industrial accident?

> A. That's what I said, yep.

> Q. If I told you that he worked the season of 1987, 1988, 1989, 1990 and until April of 1991, would that change any of your opinions in your letter of May 13, 1992?

5

A. If you give me more specifics.

Q. That he continued to work in his time-of-injury employment.

A. That would, yes.

Q. And how would that change your opinions?

A. Well, that the story that I got from him or was communicated to me, that that was not an accurate story, if that would be the case.

In Dr. Seim's deposition he unconditionally approved certain work that claimant could perform, including: central supply worker, airline security, dental lab technician and custom picture framer. In addition, there was a conditional approval of certain other positions such as valve assembler, leather brander, strap inspector and frame/screen assembler.

On July 16, 1991, Dr. James R. Burton, a Missoula orthopedic surgeon, examined claimant. Considering the medical information available, Dr. Burton agreed with the conclusion of Dr. Seim that there is a direct causal relationship between claimant's current low back problem and his industrial injury on October 15, 1986. He assigned an impairment rating of five to ten percent based on claimant's medical history.

Dr. Burton did not consider claimant's ulcerative colitis in evaluating his potential for employment.

Dr. Burton generally agreed with Dr. Seim's assessment of what work claimant would be capable of performing. In his medical report he stated:

Now, if he is capable and trained and has the education and experience to do a light type of work that doesn't involve a lot of heavy lifting, bouncing around operating

6

equipment, frequent bending, et cetera, then I--at that point I would say, yeah, this man is able to do some type of work-related activity.

On November 3, 1992, the parties deposed Dr. David H. Alpers, who was a professor of medicine at Washington University School of Medicine in St. Louis, Missouri. From the medical records Dr. Alpers found no evidence of colitis prior to April 3, 1987, and found no evidence of colitis as a pre-existing condition. He concluded there was no relationship between claimant's industrial injury and his ulcerative colitis.

On June 5, 1992, Dr. William N. Miller, certified in internal medicine and gastroenterology, examined claimant. Dr. Miller diagnosed moderately-active ulcerative colitis which was then reasonably well controlled. When asked if it were medically probable that increased stress and claimant's ulcerative colitis were related, Dr. Miller testified:

I think it's possible. I don't know that I can say that it's probable. I think that the problem with ulcerative colitis is that we have utterly no idea what causes the disease. There are many theories, as many as there are researchers, because I think it lends itself to lots of theories.

Dr. Miller acknowledged that claimant had other areas of stress in his life and it was certainly possible that such stress, rather than his industrial accident, caused his ulcerative colitis. Dr. Miller could not testify within a reasonable degree of medical probability as to the cause of the claimant's ulcerative colitis, because the cause of the ulcerative colitis is unknown.

The Workers' Compensation Court concluded, based upon the medical evidence at trial, that none of the physicians could

7

testify with a reasonable degree of medical probability that claimant's industrial injury was more likely than not to have caused his ulcerative colitis.

Other facts will be set forth as necessary.

ISSUE 1

Did the Workers' Compensation Court err in finding that claimant was not temporarily totally disabled or permanently totally disabled as a result of his October 15, 1986 industrial accident?

The statute defining temporary total disability benefits in effect at the time of claimant's injury states as follows:

"Temporary total disability" means a condition resulting from an injury as defined in this chapter that results in total loss of wages and exists until the injured worker is as far restored as the permanent character of the injuries will permit. A worker shall be paid temporary total disability benefits during a reasonable period of retraining. Disability shall be supported by a preponderance of medical evidence.

Section 39-71-116(19), MCA (1985).

To be entitled to temporary total disability benefits, the claimant has the burden of proving that as a result of his low back industrial injury he (1) has suffered a total loss of wages, and (2) has not reached maximum healing during that time. Claimant has failed to meet the second requirement. By December 26, 1986, claimant's treating physician, Dr. Quick, determined that maximum medical improvement of claimant's back condition had been reached, and claimant could return to his work as a heavy equipment operator with no restrictions. Claimant continued to work in his former position for at least four more years.

8

The Workers' Compensation Court concluded that claimant was not entitled to temporary total disability benefits under the facts in the record of this case, and we agree.

The statute defining permanent total disability benefits in effect at the time of claimant's injury states as follows:

"Permanent total disability" means a condition resulting from injury as defined in this chapter that results in the loss of actual earnings or earning capability that exists after the injured worker is as far restored as the permanent character of the injuries will permit and which results in the worker having no reasonable prospect of finding regular employment of any kind in the normal labor market. Disability shall be supported by a preponderance of medical evidence.

Section 39-71-116(13), MCA (1985).

To be entitled to permanent total disability benefits, a claimant has the burden of proving that after reaching maximum medical healing, he has a loss of earning capacity as a result of the injury and no reasonable prospect of regular employment of any kind in the normal labor market. Metzger v. Chemtron Corp. (1984), 212 Mont. 351, 355, 687 P.2d 1033, 1035.

The parties agree that Dr. Quick determined that the claimant had reached maximum medical improvement on December 26, 1986, which meets the first requirement of permanent total disability. The second requirement that claimant must meet is a showing that he has no reasonable prospect of finding regular employment of any kind in the normal labor market.

The testimony of expert witnesses produced by each of the parties has raised a conflict in the evidence concerning whether or not the claimant had any reasonable prospect of finding regular

9

employment of any kind in the normal labor market. Under our standard of review, we conclude that the decision of the Workers' Compensation Court is supported by substantial credible evidence.

ISSUE 2

Did the Workers' Compensation Court err in finding that claimant was not entitled to medical expenses incurred as a result of his ulcerative colitis?

The Workers' Compensation Court concluded that there was no medical evidence that claimant suffered from ulcerative colitis prior to his industrial injury. Claimant's treating physician, Dr. Quick, testified that there was no evidence that the claimant suffered from colitis prior to April 3, 1987.

The claimant contended that the Workers' Compensation Court should rule that it was "medically possible" that his colitis was aggravated by the industrial accident. The "possibility" standard has been applied to aggravation of a preexisting injury. However, in this case, the disabling colitis did not preexist the industrial injury.

Claimant must meet the burden of proving his case based on medical probability, which has been defined as being "more likely than not." Dallas v. Burlington Northern, Inc. (1984), 212 Mont. 514, 523, 689 P.2d 273, 277. Under this standard of proof, claimant is required to show by a preponderance of the evidence that it is more likely than not that his ulcerative colitis resulted from the industrial injury. Four doctors testified in this case on the colitis issue, and none of them would state with

10

a reasonable degree of medical probability that the industrial injury caused claimant's ulcerative colitis. The only physician that would even state causation by a medical possibility was Dr. Miller, who acknowledged that "we have utterly no idea what causes the disease" and had no other evidence to support the possibility claimant's colitis was caused by the industrial injury. Mere medical possibility without supporting evidence is insufficient to establish compensability. Currey v. 10 Minute Lube (1987), 226 Mont. 445, 449, 736 P.2d 113, 116.

Dr. Quick felt that the industrial injury could have contributed to claimant's stress and could have contributed to his development of ulcerative colitis. Dr. Quick had not observed that stress causes the disease, however. He had not treated many patients with ulcerative colitis and he was not a specialist in that field. He admitted that he could not say with a reasonable degree of medical probability that the industrial injury caused the ulcerative colitis.

Dr. Miller felt that stress can exacerbate the symptoms of ulcerative colitis, and he thought that it was possible, but not probable, that increased stress and ulcerative colitis are related in the claimant. He also testified that he could not say if stress could have brought on the initial attack, or if it was something completely unrelated to the industrial injury. Finally, he stated that he had no opinion whether stress can cause ulcerative colitis.

The medical evidence presented in this case supports the conclusion that claimant's stress existed approximately five years

11

prior to the injury and the first colitis symptoms did not appear until approximately five months after the injury. Other sources of stress in claimant's life were identified which could be related to his ulcerative colitis.

We conclude that the Workers' Compensation Court did not err in denying claimant temporary total disability benefits or permanent total disability benefits and in concluding that claimant is not entitled to medical bills or expenses incurred treating his ulcerative colitis.

Affirmed.

_____
Chief Justice

We concur:

_____

_____

_____

_____
Justices

12

July 12, 1994

## CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:


Sara R. Sexe, Esq.
Marra, Wenz, Johnson & Hopkins, P.C.
P.O. Box 1525
Great Falls, MT 59403-1525

Susan J. Rebeck
Attorney at Law
P.O. Box 2720
Great Falls, MT 59403


ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy