No. 99-099

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 225

RICHARD LEE MATTHEWS,

Petitioner and Appellant,

v.

STATE COMPENSATION INSURANCE FUND,

Respondent/Insurer for

SEA TRUCKING, INC.,

Employer and Respondent.

APPEAL FROM: Workers' Compensation Court, State of Montana,

The Honorable Mike McCarter, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Andrew F. Scott; Bulman Law Associates, Missoula, Montana

For Respondent:

Carrie L. Garber, State Compensation Insurance Fund, Helena, Montana

---

Submitted on Briefs: July 1, 1999

Decided: September 23, 1999

Filed:

_____

Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

1. ¶Appellant Richard Matthews (Matthews) appeals from the judgment of the Workers' Compensation Court.
2. ¶We affirm.
3. ¶We address the following issue:
4. ¶Whether the Workers' Compensation Court erred in concluding that Matthews failed to meet his burden of proof that his stroke-like symptoms were caused by a compensable injury.

## Standard of Review

1. ¶We review findings of fact of the Workers' Compensation Court to determine whether they are supported by substantial credible evidence. EBI/Orion Group v. Blythe, 1998 MT 90, ¶ 17, 288 Mont. 356, ¶ 17, 957 P.2d 1134, ¶ 17. Our review of the Workers' Compensation Court's conclusions of law is plenary; we determine whether its conclusions of law are correct. Liberty v. State Fund, 1998 MT 169, ¶ 7, 289 Mont. 475, ¶ 7, 962 P.2d 1167, ¶ 7.

## Factual and Procedural Background

1. ¶Matthews was a long-haul truck driver for SEA trucking. On April 7, 1996 Matthews stopped in Ohio to fix the roof lights on his truck, fell, and struck his head on the ground. He apparently lost consciousness briefly. After his fall, Matthews had a headache, rested and then continued driving. The following morning, Matthews phoned his fleet manager, reported his fall, and stated that he would be late with his delivery. While on the phone with his supervisor, Matthews passed out.
2. ¶Matthews was taken by ambulance to Memorial Hospital in Geneva, Ohio. Matthews was later transported by helicopter to a hospital in Cleveland, Ohio. He was diagnosed with a cerebral vascular accident (CVA) or stroke. However, his medical tests failed to provide objective evidence of a stroke.
3. ¶Matthews later received treatment from a Veterans Administration medical center in Hot Springs, South Dakota. In July, 1996 Steven Hata (Dr. Hata), a neurologist associated with the Hot Springs medical center, evaluated Matthews and determined that he suffered from "post cerebrovascular accident, etiology undetermined." Dr. Hata ordered an MRI; its result was normal. In September, 1996 Dr. Hata

commented that

This patient shows no objective evidence of having had a left middle cerebral stroke nor a subcortical thalamic stroke in the left hemisphere which would account for his right hemiparesis and aphasia. . . . With the negative MRI scan as well as no evidence of stroke risk and acute stroke during his acute hospitalization in Cleveland, this raises the possibility that some of these symptoms are nonphysiologic and that the patient's symptoms are perpetuated, if not caused by, a conversion type of symptomatology.

Dr. Hata determined that "[n]o further workup is indicated." He concluded that Matthews might be depressed and that "a [p]sychiatric/psychological evaluation might uncover conversion tendencies."

1. ¶At the time of Matthews' fall, SEA trucking was insured by the State Compensation Insurance Fund (hereafter, State Fund). In May, 1996 Matthews filed a claim for workers' compensation benefits. The State Fund obtained a medical peer panel review of Matthews' claim in August, 1996. The panel, which was comprised of three physicians, concluded:

From review of the medical records, it would appear that the cerebral vascular accident resulted from a thrombotic or embolic phenomenon. Most likely, the etiology of the stroke relates to the patient's hypertension. There is no evidence that the stroke was caused from a traumatic event. There is no evidence on the CT scan of a skull fracture, or an epidural or subdural hematoma. The localized right hemiparesis indicates that a branch of a cerebral artery was occluded, and the resultant hemiparesis occurred. This type of occlusion develops from a thrombotic or embolic phenomenon, and is not related to soft tissue trauma.

1. ¶In his January, 1999 trial Matthews presented no medical testimony but asked that the Workers' Compensation Court make its determination based on his medical records. The Workers' Compensation Court concluded that "[i]n light of the uncontradicted medical panel opinion of August 16, 1996, [Matthews] has failed to persuade the Court that his hemiparesis and aphasia were caused by his April 7, 1996 fall." The Workers' Compensation Court further concluded that Matthews had

failed to meet his burden of proof that he is entitled to workers' compensation benefits and dismissed his case with prejudice. From that judgment Matthews appeals.

## Discussion

1. ¶Whether the Workers' Compensation Court erred in concluding that Matthews failed to meet his burden of proof that his stroke-like symptoms were caused by a compensable injury.

2. ¶Matthews argues that the Workers' Compensation Court erred in relying on the opinion of the medical peer panel. Matthews asserts that the medical peer panel opinion was based on incomplete information and that it was called into question by tests performed after Matthews left Memorial Hospital in Ohio. However, Matthews does not identify those tests or their results. Matthews also argues that the medical peer panel's opinion was called into question by Dr. Hata's assessment of Matthews. Matthews contends that Dr. Hata's report raised the possibility that "his symptoms were caused by a conversion type of symptomology." Relying on Plainbull v. Transamerica Ins. Co. (1994), 264 Mont. 120, 870 P.2d 76, Matthews argues further that causation may be established by indirect evidence when medical science cannot provide proof and that he provided such evidence through Dr. Hata's assessment.

3. ¶The State responds that there is no objective medical evidence that Matthews suffered a conversion reaction. Further, the State argues that even assuming *arguendo* that Matthews had a conversion reaction, there is no evidence that it was caused by his fall from the truck.

4. ¶We begin by addressing the pertinent statutory provisions. We have previously recognized that "[i]t is well established that the workers' compensation law in effect at the time of an injury governs the claim." Murer v. State Comp. Mut. Ins. Fund (1997), 283 Mont. 210, 219, 942 P.2d 69, 74. Matthews' alleged injury occurred in April, 1996 and the 1995 Workers' Compensation Statutes therefore apply in the present case. Section 39-71-407, MCA (1995), provides in pertinent part:

**Liability of insurers--limitations**. (1) Each insurer is liable for the payment of compensation, in the manner and to the extent provided in this section, to an employee of an employer that it insures who receives an injury arising out of and in the course of employment or, in the case of death from the injury, to the employee's beneficiaries, if any.

(2) (a) An insurer is liable for an injury, as defined in 39-71-119, if the injury is

established by objective medical findings and if the claimant establishes that it is more probable than not that:

(i) a claimed injury has occurred . . . .

Section 39-71-407, MCA (1995). Section 39-71-119, MCA (1995), provides in pertinent part:

(1) "Injury" or "injured" means:

(a) internal or external physical harm to the body that is established by objective medical findings;

. . . .

(2) An injury is caused by an accident. An accident is:

(a) an unexpected traumatic incident or unusual strain;

(b) identifiable by time and place of occurrence;

(c) identifiable by member or part of the body affected; and

(d) caused by a specific event on a single day or during a single work shift.

. . . .

(5) (a) A cardiovascular, pulmonary, respiratory, or other disease, cerebrovascular accident, or myocardial infarction suffered by a worker is an injury only if the accident is the primary cause of the physical condition . . . .

Section 39-71-119, MCA (1995).

1. ¶We have previously determined that a claimant for workers' compensation benefits must initially "prove by a preponderance of the evidence that he sustained a

compensable injury." Chaney v. U.S. Fidelity & Guar. (1996), 276 Mont. 513, 518, 917 P.2d 912, 915 (citation omitted). Further, a claimant must show that "a causal condition existed between his injury and his current condition." *Chaney*, 276 Mont. at 518, 917 P.2d at 915 (citation omitted).

2. ¶We conclude that Matthews' reliance on *Plainbull* is mistaken. *Plainbull* addressed § 39-71-407, MCA (1989), which provided in pertinent part that "[a]n insurer is liable for an injury as defined in 39-71-119 if the claimant establishes it is more probable than not that: (i) a claimed injury has occurred . . . ." Section 39-71-407(2)(a)(i), MCA (1989). However, in 1995 the legislature amended § 39-71-407, MCA, to provide in pertinent part that "[a]n insurer is liable for an injury, as defined in 39-71-119, *if the injury is established by objective medical findings* and if the claimant establishes that it is more probable than not . . . . " Section 39-71-407(2)(a), MCA (1995) (emphasis added). In addition, the legislature inserted the requirement that "[a]n employee is not eligible for benefits payable under this chapter unless the entitlement to benefits is established by objective medical findings that contain sufficient factual and historical information concerning the relationship of the workers' condition to the original injury." Section 39-71-407(6), MCA (1995). Thus, unlike the claimant in *Plainbull*, Matthews had to establish with objective medical findings that an injury occurred. *Compare Plainbull*, 264 Mont. at 125, 870 P.2d at 79 (concluding "nothing in [§ 39-71-407(2)(a), MCA (1989),] requires a medical opinion as to whether the injury actually occurred or not").

3. ¶In the present case, Matthews has identified nothing in the record that shows a causal relationship between his accident and his stroke-like symptoms. Further, Matthews' reliance on Dr. Hata's assessment is misplaced. Dr. Hata did not state that Matthews' symptoms were possibly caused by a conversion reaction but recognized instead the possibility that "some of these symptoms are nonphysiologic and that the patient's symptoms are perpetuated, if not caused by, a conversion type of symptomatology." Thus, contrary to Matthews' argument, Dr. Hata did not conclude that a conversion reaction was the only likely cause of his stroke-like symptoms. More importantly, Dr. Hata did not suggest that Matthews' fall was responsible for his stroke-like symptoms. Nor did Dr. Hata dispute Matthews' previous diagnosis of CVA. We conclude that Dr. Hata's assessment of Matthews was not inconsistent with the conclusions of the medical peer panel.

4. ¶We hold that the Workers' Compensation Court did not err in concluding that Matthews failed to meet his burden of proof that his stroke-like symptoms were caused by a compensable injury.

5. ¶Affirmed.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ KARLA M. GRAY

/S/ JIM REGNIER

/S/ WILLIAM E. HUNT, SR.

/S/ TERRY N. TRIEWEILER