No. 02-049

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 221

STEPHEN BENTZ,

       Petitioner and Respondent,

  v.

LIBERTY NORTHWEST,

       Respondent/Insurer and Appellant, for

ARTCRAFT PRINTERS,

       Employer.

APPEAL FROM:    Workers' Compensation Court, State of Montana
                  The Honorable Mike McCarter, Judge presiding.

COUNSEL OF RECORD:

       For Appellant:

       Larry W. Jones, Attorney at Law, Missoula, Montana

       For Respondent:

       Chris J. Ragar, Attorney at Law, Bozeman, Montana

**FILED**

OCT 0 1 2002

Filed: *Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted on Briefs: May 23, 2002

Decided: October 1, 2002

_____
                Clerk

Justice Jim Regnier delivered the Opinion of the Court.

¶1     Respondent Stephen Bentz filed a petition for emergency hearing in the Workers' Compensation Court in which he alleged that Appellant Liberty Northwest Insurance Corporation, as insurer for Artcraft Printers, should compensate him for an injury he incurred during the course and scope of his employment with Artcraft. The Workers' Compensation Court entered judgment against Liberty, ordering it to pay Bentz's costs, and Liberty appeals. We affirm the judgment of the Workers' Compensation Court.

¶2     We restate the sole issue on appeal as follows:

¶3     Is the injury Bentz sustained while retrieving mail at his home address compensable under the Montana Workers' Compensation Act because it occurred within the course and scope of his employment?

## BACKGROUND

¶4     On December 22, 1999, Stephen Bentz was hired as a sales representative for the Bozeman, Montana, office of Artcraft Printers. Bentz's job duties included bidding on, preparing for, and working with clients on print jobs, which he was to solicit from other Montana businesses. Artcraft signed an employment contract with Bentz, and Bentz was compensated with a salary, a five percent commission on sales, a medical plan, a flex plan, and reimbursement of his expenses. Bentz's job with Artcraft also required him to travel. Initially, Bentz spent an average of two hours each day performing outside sales calls, and made business trips to Helena, Montana, once or twice a month. As Bentz continued his

employment with Artcraft, his travel time increased to an average of three to four hours each day. Bentz also continued to conduct regular business trips outside of the Bozeman area.

¶5 On November 14, 2000, the nature of Bentz's compensation from Artcraft shifted. Bentz no longer received a weekly salary, a medical plan, a flex plan, or expense reimbursement from Artcraft. Instead, Bentz was compensated for his work on a straight commission sales basis, and the amount of his commission was increased to ten percent. As a part of this change, Bentz requested that he be allowed to work primarily out of his home office, a provision to which Artcraft agreed. Artcraft, however, expected that Bentz come into their Bozeman office at least once a week to perform several of his job duties. Additionally, Bentz was required to conduct outside sales calls in the same manner as he had prior to the shift in employment. During the period in which Bentz worked out of his home, he regularly received telephone calls, faxes and e-mail pertaining to his employment with Artcraft. Finally, Bentz often received business-related, but non-essential, mail at his home address.

¶6 On February 27, 2001, Bentz traveled the three miles from his home to Artcraft's Bozeman office. While there, Bentz checked his messages and engaged in various other employment activities. Bentz remained at Artcraft's office for approximately three hours, and then returned home with the intent to continue working from his home office. On his way home, Bentz stopped at his mailbox to pick up the mail. Although Bentz's mailbox was located approximately two blocks from his home, it was not out of his way, as Bentz invariably passed the mailbox when traveling between Artcraft's office and his home. As Bentz was retrieving his mail, he slipped and fell onto the ice, injuring his hip.

3

¶7 At the time of Bentz's injury, Artcraft was insured by Liberty Northwest. Bentz gave proper notice of his injury to both Artcraft and Liberty. Liberty, however, denied any liability, asserting that Bentz's injury occurred during travel which was not within the course and scope of his employment. On September 4, 2001, Bentz filed a petition for emergency hearing with the Workers' Compensation Court, claiming that he suffered a compensable industrial injury. Bentz further requested that Liberty compensate him for reasonable medical expenses and workers' compensation benefits under the Montana Workers' Compensation Act, and that Liberty be held liable for a twenty percent penalty and for reasonable costs and attorney's fees. On September 17, 2001, the Workers' Compensation Court reviewed Bentz's petition and scheduled the case for an expedited trial.

¶8 The case proceeded to trial on November 8, 2001. The Workers' Compensation Court issued its findings of fact, conclusions of law and judgment on November 19, 2001. The Workers' Compensation Court: 1) concluded that Bentz's injury was work related, occurring in the course and scope of his employment, and compensable; and 2) held Liberty Northwest liable for Bentz's costs. On December 12, 2001, Liberty Northwest appealed the Workers' Compensation Court's findings of fact, conclusions of law and judgment.

## STANDARD OF REVIEW

¶9 We review findings of fact of the Workers' Compensation Court to determine whether they are supported by substantial credible evidence. *Matthews v. State Compensation Ins. Fund*, 1999 MT 225, ¶ 5, 296 Mont. 76, ¶ 5, 985 P.2d 741, ¶ 5. Our review of the Workers'

Compensation Court's conclusions of law is plenary; we determine whether its conclusions of law are correct. *Matthews*, ¶ 5.

## DISCUSSION

¶10 Is the injury Bentz sustained while retrieving mail at his home address compensable under the Montana Workers' Compensation Act because it occurred within the course and scope of his employment?

¶11 Appellant Liberty Northwest contends that the injury Bentz suffered while retrieving his mail did not occur within the course and scope of his employment with Artcraft. Liberty also maintains that Artcraft's agreement with Bentz, which allowed Bentz to work out of his home, did not make travel from Artcraft's office to Bentz's home a required function of his position. Instead, Liberty argues that Bentz's desire to work at home was rooted in Bentz's own personal convenience. As such, Liberty asserts that any injury incurred during such travel is not compensable under the Montana Workers' Compensation Act.

¶12 This case is governed by the 1999 version of the Montana Workers' Compensation Act, §§ 39-71-101-2914, MCA (1999), which was in effect on the date of Bentz's injury. *See Buckman v. Montana Deaconess Hosp.* (1986), 224 Mont. 318, 321, 730 P.2d 380, 382. The travel provisions at § 39-71-407(3), MCA (1999), of the Workers' Compensation Act establish the criteria for determining whether an injury which occurs during travel is compensable. Generally, to be compensable an injury must occur within the course and scope of employment, and travel to work and coming home from work ("going and coming")

5

is not within the course and scope of employment. *Buhl v. Warm Springs State Hosp.* (1989), 236 Mont. 363, 364, 769 P.2d 1258, 1259.

¶13 The Montana Legislature adopted the travel provisions at § 39-71-407(3), MCA (1999), of the Workers' Compensation Act in 1987, recognizing this "going and coming" rule and the exceptions to the rule which had evolved over the years. *State Compensation Mut. Ins. Fund v. James* (1993), 257 Mont. 348, 350, 849 P.2d 187, 188-89. Section 39-71-407, MCA (1999), provides, in pertinent part:

> (3)    An employee who suffers an injury or dies while traveling is not covered by this chapter unless:
>
> (a)    (i) the employer furnishes the transportation or the employee receives reimbursement from the employer for costs of travel, gas, oil, or lodging as a part of the employee's benefits or employment agreement; and
>
> (ii) the travel is necessitated by and on behalf of the employer as an integral part or condition of the employment; or
>
> (b)    the travel is required by the employer as part of the employee's job duties.

¶14 Liberty bolsters its contention that Bentz's travel was of the "going and coming" variety, not compensable under any portion of the travel provisions, by comparing the instant case to *James*, referenced above. In *James*, an employee was called from her home to the hotel where she was employed to repair a computerized mail solicitation program. While en route to the hotel, the employee was injured in an automobile collision. In *James*, we noted that "[n]either [employee] Ms. James, nor any other hotel manager, had ever submitted claims for, or received reimbursement for, mileage for travel from their homes to the hotel

which was their regular job site." *James*, 257 Mont. at 352, 849 P.2d at 190. We concluded that employee James was injured while "going and coming" from her home to the site of her primary employment, as: "Ms. James was not traveling to another job site during the course and scope of her work. She was simply traveling from her home to the hotel in which she normally worked in order to engage in data entry responsibilities." *James*, 257 Mont. at 352, 849 P.2d at 190. Therefore, this Court declined to find James's travel compensable under the travel provisions of § 39-71-407(3), MCA (1999), holding that "the phrase 'as part of' in subparagraph (3)(b), does not include travel to and from the employee's regular job site." *James*, 257 Mont. at 353, 849 P.2d at 190.

¶15 The facts from *James* are clearly distinguishable from those in the instant case. We determined that the injury in *James* was not compensable because the employee was not traveling *between* job sites, but rather from her home to her primary job site. Here Bentz was in fact traveling between two job sites in the course and scope of his regular employment– his home office and Artcraft's business office. Therefore, since Bentz suffered an injury while traveling between two job sites, his travel cannot be characterized as merely "going and coming" to work.

¶16 To determine the applicability of the travel provisions to the case at bar, we must first examine whether Bentz was engaged in travel. In *Carrillo v. Liberty Northwest Ins.* (1996), 278 Mont. 1, 922 P.2d 1189, an employee was injured by an automobile while walking to a gift store during a coffee break provided for by her employer. The Montana Workers' Compensation Court held in *Carrillo* that the one and one-half block journey that the

7

employee made from her place of employment to the gift store constituted traveling. *Carrillo*, 278 Mont. at 5, 922 P.2d at 1192. We reversed the Workers' Compensation Court on this issue, stating that "according to Black's Law Dictionary 1500 (6th ed. 1990), to travel is 'to go from one place to another at a distance; to journey'. It does not seem to include trips of one and one-half blocks." *Carrillo*, 278 Mont. at 8, 922 P.2d at 1194. Although our decision in *Carrillo* provides little guidance as to the length of distance necessary to establish travel, we conclude the three miles which Bentz traveled in the case before us sufficient to constitute travel. As such, the travel provisions of § 39-71-407(3), MCA (1999), apply to this case.

¶17 At trial, both Liberty and Bentz conceded that the criteria of subsection (a) of the travel provisions were not satisfied under the facts surrounding Bentz's employment with Artcraft. We now turn our attention to subsection (b) of the travel provisions at § 39-71-407(3), MCA (1999), which provides that travel by employees is covered by insurance if it "is required by the employer as part of the employee's job duties." Liberty asserts that Artcraft did not require Bentz to travel to his home office, but rather that Bentz was doing so to benefit his own personal convenience. Bentz counters that his travel was directly related to the performance of his job, as he was required to drive into Artcraft's office at least once a week as a condition of his employment.

¶18 The Workers' Compensation Court held that Bentz's travel was required by Artcraft as a part of his employment. Liberty contests this holding, citing *Santa Rosa Junior College v. W. C. A. B.* (Cal. 1985), 708 P.2d 673, a case in which a college instructor was killed by

8

an automobile on his way home from the campus. At the time of the accident, the instructor carried with him student papers that he intended to grade that evening in his home office, a ritual he performed on a regular basis. The facts of *Santa Rosa* are distinguishable from the instant case because while the instructor in *Santa Rosa* regularly took work home with him, his employer simply acquiesced to this practice, it did not expressly permit it. However, in the case before us, Bentz requested that he be allowed to work out of his home, and Artcraft specifically agreed to this proposal, only expecting that Bentz come into the Artcraft office at least once a week. That is, the exchange between Bentz and Artcraft, in which Bentz would receive only commission as compensation, and Artcraft would allow Bentz to work primarily out of his home, was bargained for. The arrangement that Bentz negotiated with Artcraft to work at home, although convenient for Bentz, was also a factor of his amended employment status as a straight commission salesperson. Bentz's home office became his primary job site under this new arrangement. Therefore, by constructing Bentz's job duties such that several of them necessitated regular performance at the Artcraft office, Artcraft *required* Bentz's travel from his home office to Artcraft's business office. Accordingly, we agree with the Workers' Compensation Court that Bentz's travel to Artcraft's office was a required part of his employment with Artcraft, and as such, the travel is covered under § 39-71-407(3)(b), MCA (1999), of the Montana Workers' Compensation Act.

¶19 For the foregoing reasons, the judgment of the Workers' Compensation Court is affirmed.

_____
                                    Justice

We Concur:

_____

_____

_____
        Justices