JUSTICE TRIEWEILER
delivered the Opinion of the Court.
The claimants, Jack Murer, Jay Harbrige, Keith Mordja, Susan Vernon, Bruce Nelson, Steve Prickett, and James Brown, filed a petition for benefits in the Workers’ Compensation Court for the State *214 of Montana. On November 20, 1995, the Workers’ Compensation Court entered its final judgment granting in part and denying in part the benefits and fees which were sought. Claimants appeal and the respondent, State Compensation Mutual Insurance Fund, cross-appeals. We affirm in part and reverse in part the judgment of the Workers’ Compensation Court, and remand to that court for further proceedings consistent with this opinion.
On appeal, claimants raise the following issues:
1. Did the Workers’ Compensation Court err when it concluded that the temporary cap on maximum benefits enacted in 1987 did not expire until June 30, 1991?
2. Did the Workers’ Compensation Court err when it concluded that the settlement agreements entered into between claimants and the State Fund foreclose claimants’ rights to further benefits?
3. Did the Workers’ Compensation Court err when it denied claimants’ motion for attorney fees pursuant to the common fund doctrine?
On cross-appeal, the State Fund raises the following issues:
1. Did the Workers’ Compensation Court err when it concluded that an impairment award, paid in the form of a lump sum before June 30,1991, at the request of claimant Keith Mordja, must be increased pursuant to Murer II ?
2. Did the Workers’ Compensation Court err when it determined that the State Fund’s failure to increase Mordja’s impairment award was unreasonable and, on that basis, assessed a penalty pursuant to § 39-71-2907, MCA?
FACTUAL BACKGROUND
In 1987, the Montana Legislature enacted the following cap on temporary total disability benefits for injured workers:
[B]eginning July 1, 1987, through June 30, 1989, weekly compensation benefits for temporary total disability may not exceed the state’s average weekly wage of $299 established July 1, 1986.
Section 39-71-701(5), MCA (1987). See also § 39-71-702(6), MCA (1987) (permanent total disability), and § 39-71-703(3), MCA (1987) (permanent partial disability). The 1989 Legislature enacted similar caps for injuries which occurred between July 17,1989, and June 30, 1991. Those caps extended “through June 30, 1991.” See §§ 39-71-701(5), -702(6), and -703(3), MCA (1989). The State Fund deemed the caps ($299 per week for total benefits; $149.50 per week for partial benefits) to be permanent and, on that basis, continued to apply them after June 30, 1991.
*215 Claimants are seven workers who were injured between July 1, 1987, and June 30, 1991, and who are entitled to disability benefits at the maximum statutory rate. They filed a petition in the Workers’ Compensation Court in which they contended that the 1987 and 1989 legislative caps were temporary and, therefore, cannot be applied after 1991. Furthermore, they asserted that: (1) the temporary cap enacted in 1987 expired June 30, 1989, and did not apply thereafter to workers injured before that date; and (2) the temporary cap enacted in 1989 can only be applied to injuries which occurred between July 17, 1989, and June 30, 1991.
Claimants initiated this litigation as representatives of a class of injured claimants similarly situated. However, the Workers’ Compensation Court concluded that
a final judgment will have the same effect as a class action without the unnecessary complications. The Court is convinced that the regulatory agency (D.O.L.I.) and the supervision of the courts sufficiently protects all claimants ....
On that basis, the Workers’ Compensation Court denied class certification and, on appeal, we affirmed. Murer v. State Fund (1993), 257 Mont. 434, 849 P.2d 1036 (Murer I).
On remand, the Workers’ Compensation Court concluded that the 1987 and 1989 caps were permanent and that, therefore, the State Fund could continue to apply the caps after June 30,1991. On appeal from that decision, we reversed the Workers’ Compensation Court, held that the caps on disability benefits were only temporary, and remanded the case to the lower court for further proceedings. Murer v. State Fund (1994), 267 Mont. 516, 885 P.2d 428 (Murer II).
Pursuant to Murer II, the State Fund was obligated to increase benefit payments to a substantial number of claimants who were neither parties to, nor directly involved in the Murer litigation. For that reason, claimants again moved for class certification. The State Fund, however, agreed to contact and pay all absent claimants, without requiring further action on their behalf.
Under supervision of the Workers’ Compensation Court, the State Fund identified and notified absent claimants, and disbursed to them the required increase in benefits. Claimants and their attorneys asserted a lien for fees against those increased payments. In recognition of that lien, the State Fund withheld 20 percent from the amounts paid to absent claimants. Claimants also moved the Workers’ Compensation Court to award them attorney fees pursuant to the common fund doctrine.
*216 On February 16, 1995, thirteen absent claimants, Beverly Hardy, et.al., filed a motion to intervene, which the Workers’ Compensation Court granted. On August 7,1995, the court denied claimants’motion and refused to award them attorney fees pursuant to the common fund doctrine.
Claimants continued to assert that workers’ compensation claimants injured between 1987 and 1989 should be subject only to the 1987 cap, and that the 1989 cap applies only to claimants injured between 1989 and 1991. The Workers’ Compensation Court, however, refused to differentiate between the two classes of injured workers and concluded that both the 1987 and the 1989 temporary caps expired June 30, 1991.
During the pendency of this litigation, four of the Claimants — Jay Harbrige, Susan Vernon, Steve Prickett, and James Brown — made settlement agreements with the State Fund. Each of the settlement agreements was executed on Form LF820, a standardized form which is published by the Department of Labor and Industry for purposes of lump sum conversions pursuant to § 39-71-741(2), MCA. Form LF820 contains the following caption:
PETITION FOR COMPROMISE AND RELEASE SETTLEMENT
(Permanent Partial Wage Supplement and/or Rehabilitation Benefits).
Notwithstanding the parenthetical language to the caption, the operative provisions of each agreement contain the following language:
The parties to this matter have agreed to fully and finally conclude all compensation and/or rehabilitation payments due the claimant under the Workers’ Compensation Act....
The claimant hereby petitions the Division of Workers’ Compensation ... for approval of this petition and that the claim be fully and finally closed on the basis set forth above.
The Department of Labor and Industry approved each settlement petition, and its orders provide that the State Fund is “fully released and discharged from all further obligations for compensation benefits for this injury under the Workers’ Compensation Act.” Those orders also indicate that any dissatisfied party can appeal the order to the Workers’ Compensation Court; however, no appeals were filed.
*217 Claimants’ counsel selected and prepared these standardized settlement petitions (Form LF820), and then forwarded them to the State Fund for execution. Claimants’ counsel, however, did not use the additional spaces provided to insert any special provisions or to indicate the retention of any specific rights.
Claimants maintained that there are ambiguities in the settlement petitions, and that the contemporaneous correspondence between the parties reveal that they intended to settle only their wage supplement and rehabilitation entitlements. The Workers’ Compensation Court, however, concluded that the settlement petitions foreclose Claimants’ rights to all further workers’ compensation benefits, including their rights to increased temporary total and impairment rating benefits.
Claimant Keith Mordja was injured on January 17,1988. On June 14, 1990, it was determined that he had reached maximum healing and his physician evaluated his physical impairment at 30 percent. On June 27, 1990, the State Fund notified him that his impairment rating entitled him to 150 weeks of benefits, commencing June 14, 1990. Thus, 54.57 weeks of benefits would accrue before July 1,1991, and 95.43 weeks would accrue after July 1,1991. He elected to receive his impairment award in a lump sum and received the balance of his award on July 10, 1990. Pursuant to § 39-71-703(l)(a)(iii), MCA (1987), his lump sum award was reduced to present value.
Pursuant to Murer II, the Workers’ Compensation Court concluded that, with regard to those benefits paid for the 95.43 weeks after July 1,1991, Mordja was entitled to an increase in his impairment award:
The State Fund’s refusal to pay the additional benefits was unreasonable. More than 95 weeks of the benefits were attributable to the time period after the temporary cap had expired. In paying the benefits in a lump sum the State Fund discounted the future benefits to present value (See § 39-71-703(l)(a)(iii), MCA (1987)), thus acknowledging that the benefits were attributable to the later time. The matter was not reasonably debatable.
On that basis, the court assessed a 20 percent penalty in the amount of $191.32 pursuant to § 39-71-2907, MCA.
STANDARD OF REVIEW
When we review the Workers’ Compensation Court’s conclusions of law, our standard of review is plenary and we must determine whether its conclusions are correct as a matter of law. Lund v. State Fund (1994), 263 Mont. 346, 348, 868 P.2d 611, 612.
*218 ISSUE 1
Did the Workers’ Compensation Court err when it concluded that the temporary cap on maximum benefits enacted in 1987 did not expire until June 30, 1991?
The Workers’ Compensation Court concluded that the 1987 temporary cap on maximum benefits did not expire until June 30, 1991. The court based its conclusion on the following language contained within Murer II:
We hold that the “cap” on benefits, of $299.00, set by the 1987 and 1989 legislatures in § 39-71-701(5), MCA, was a temporary cap on benefits which terminated on June 30,1991, and that on that date the appellants should have begun receiving benefits under § 39-71-701(3), MCA, at the statutory rate determined as of the date of injury....
Murer II, 267 Mont. at 522, 885 P.2d at 432. While this isolated quote, by itself, arguably supports the Workers’ Compensation Court’s conclusion, a more thorough analysis of the entire Murer II opinion, and its rationale, reveals that Murer II does not support the Workers’ Compensation Court’s conclusion.
In Murer II, we held that, pursuant to the plain, objective language of the relevant statutes, the 1987 and 1989 caps on maximum benefits were only temporary and, therefore, that the State Fund could not continue to apply those caps after the dates on which they expired. We reasoned as follows:
Appellants argue, and we agree, that subsection (5) of § 39-71-701, MCA, for the years 1987 and 1989, was a temporary, time-specific limitation and that when the limitation expired, the claimants should then have been paid maximum benefit rates not to exceed the state’s average weekly wage rate at the time ofthe injury under § 39-71-701(3), MCA.
Murer II, 267 Mont. at 522, 885 P.2d at 432. Accordingly, to the extent that any language in Murer II supports the Workers’ Compensation Court’s conclusion, we clarify that opinion today.
The 1987 law unequivocally provides that the temporary caps on maximum benefits expired June 30,1989. “[B]eginning July 1,1987, through June 30, 1989, weekly compensation benefits for temporary total disability may not exceed the state’s average weekly wage of $299 established July 1, 1986.” Section 39-71-701(5), MCA (1987) (emphasis added). See also § 39-71-702(6), MCA (1987) (permanent *219 total disability), and § 39-71-703(3), MCA (1987) (permanent partial disability).
It is well established that the workers’ compensation law in effect at the time of an injury governs the claim. Chagnon v. Travelers Ins. Co. (1993), 259 Mont. 21, 25, 855 P.2d 1002, 1004; Watson v. Seekins (1988), 234 Mont. 309, 312, 763 P.2d 328, 331. Furthermore, it is undisputed that any attempt by the Legislature to retroactively change the law in effect at the time of an injury would be an unconstitutional impairment of contract. Buckman v. State Comp. Ins. Fund (1986), 224 Mont. 318, 328, 730 P.2d 380, 386.
Based on these well-established principles of law, we make the following conclusions: (1) the 1987 temporary cap applies to injuries which occurred between July 1,1987, and June 30,1989; (2) the 1987 temporary cap expired June 30, 1989; (3) the 1989 temporary cap applies to injuries which occurred between July 17, 1989, and June 30,1991; (4) the 1989 temporary cap expired June 30,1991; and (5) the 1989 temporary cap cannot be applied retroactively to injuries which occurred prior to July 17, 1989, the date on which it became effective.
Accordingly, we hold that the Workers’ Compensation Court erred when it concluded that the temporary cap on maximum benefits enacted in 1987 did not expire until June 30, 1991. That part of the Workers’ Compensation Court’s judgment to the contrary is reversed.
ISSUE 2
Did the Workers’ Compensation Court err when it concluded that the settlement agreements entered into between claimants and the State Fund foreclose claimants’ rights to additional benefits?
During the pendency of this litigation, four of the claimants — Jay Harbrige, Susan Vernon, Steve Prickett, and James Brown — reached settlement agreements with the State Fund. The Workers’ Compensation Court concluded that those agreements foreclose claimants’ rights to all further workers’ compensation benefits, including increased temporary total and impairment rating benefits.
On appeal, claimants contend that the settlement agreements foreclose only their entitlements to wage supplement and rehabilitation benefits and, therefore, that the Workers’ Compensation Court erred when it concluded that those agreements foreclose their rights to all further benefits. In support of this contention, they assert the following two arguments: (1) pursuant to Ingraham v. Champion International (1990), 243 Mont. 42, 793 P.2d 769, the settlement *220 petitions used by the parties (DOLI Form LF820) cannot be applied to impairment awards; and (2) because the settlement petitions are ambiguous, the court can and should analyze extrinsic evidence in order to determine the parties’ intent.
Claimants’ first argument asserts that: (1) pursuant to Ingraham, impairment awards are not subject to the lump sum conversion requirements of § 39-71-741, MCA; (2) the settlement petitions used in this case (DOLI Form LF820) are specifically designed to implement the provisions of § 39-71-741(2), MCA; and (3) therefore, the settlement petitions cannot be applied to impairment awards.
Although § 39-71-741(2), MCA (1987-89), permits permanent total disability and permanent partial wage supplement benefits to be converted to a lump sum, it does not preclude claimants who are entitled to either type of those benefits from fully and finally settling their potential rights to other types of benefits. Furthermore, Ingraham merely provides that lump sum awards of impairment benefits are not subject to the requirements set forth in § 39-71-741(2), MCA (1987-89). Ingraham, 243 Mont. at 47, 793 P.2d at 772. We therefore conclude that claimants’ reliance upon Ingraham is misplaced.
Second, claimants contend that the settlement petitions are ambiguous and, therefore, that the court can and should analyze extrinsic evidence — the contemporaneous correspondence between the parties — in order to determine the parties’ intent. In their brief, they concede that there is language in the body of the petitions which “could be construed as closing all claims for all types of benefits.” The exact language of the settlement petitions to which they refer provides, in part, that the parties “agreed to fully and finally conclude all compensation and/or rehabilitation payments due the claimant” and that the claimant “petitions the Division of Workers’ Compensation ... for approval of this petition and that the claim be fully and finally closed.”
Despite that operative language in the petitions, claimants allege that, based on the following factors, the settlement petitions are ambiguous: (1) the petitions are standardized forms, produced by the DOLI; (2) the petitions are designed to implement, and correspond directly to § 39-71-741(2), MCA; and (3) the petition is captioned: “(Permanent Partial Wage Supplement and/or Rehabilitation Benefits).”
Although the settlement petitions are, in fact, standardized forms produced by the DOLI pursuant to § 39-71-741(2), MCA, claimants’ counsel selected and prepared the petitions, and then forwarded them to the State Fund for execution. Claimants’ counsel, however, did not *221 attempt to modify the unambiguous language in the petitions; nor did they use the additional spaces provided to insert any special provisions or to indicate the retention of any specific rights. Had they intended to enter into only a partial settlement, they could easily have inserted an express provision which retained their rights to further benefits.
Therefore, even if we assume, without deciding, that the settlement petitions in this case are, in fact, ambiguous, we conclude that any such ambiguities must be strictly construed against the party who created them. Mueske v. Piper, Jaffray & Hopwood, Inc. (1993), 260 Mont. 207, 216, 859 P.2d 444, 449-50; Lauterjung v. Johnson (1977), 175 Mont. 74, 78, 572 P.2d 511, 513. Accordingly, we hold that the Workers’ Compensation Court did not err when it concluded that the settlement agreements entered into between claimants and the State Fund foreclose claimants’ rights to all further benefits, including increased temporary total and impairment rating benefits. That part of the judgment of the Workers’ Compensation Court is affirmed.
ISSUE 3
Did the Workers’ Compensation Court err when it denied claimants’ motion for attorney fees pursuant to the common fund doctrine?
As a result of our decision in Murer II, the State Fund became obligated to increase the rate of benefits payments to a substantial number of workers’ compensation claimants who were neither parties to, nor directly involved in the Murer litigation. Accordingly, the State Fund agreed to contact and pay those absent claimants. Under supervision of the Workers’ Compensation Court, the State Fund identified and notified the absent claimants, and disbursed to them the required increase in benefits.
Claimants and their attorneys asserted a lien against those increased payments. In recognition of that lien, the State Fund withheld 20 percent from the amounts paid to absent claimants. Claimants also moved the Workers’ Compensation Court to award them attorney fees pursuant to the common fund doctrine. The Workers’ Compensation Court, however, denied that motion.
On appeal, claimants contend that the Workers’ Compensation Court erred when it denied their motion. Claimants concede that they do not have attorney fee agreements with the absent claimants and that they are not statutorily entitled to the requested fees. However, they maintain that, as a result of their attorneys’ efforts throughout *222 the Murer litigation, they have created a common fund which has directly benefitted a substantial number of the absent claimants and, therefore, that those absent claimants should be required to share in the costs, including reasonable attorney fees, of this unique litigation. On that basis, claimants assert that they are entitled, pursuant to the equitable common fund doctrine, to reimbursement of their reasonable attorney fees.
The common fund doctrine is deeply rooted in American jurisprudence and provides a well-recognized exception to the traditional American rule regarding attorney fees. The United States Supreme Court created the common fund doctrine in Trustees v. Greenough (1881), 105 U.S. 527, 15 Otto 527, 26 L. Ed. 1157, and has subsequently applied that doctrine in numerous other cases. See e.g. Boeing Co. v. VanGemert (1980), 444 U.S. 472, 100 S. Ct. 745, 62 L. Ed. 2d 676; Alyeska Pipeline Serv. Co. v. Wilderness Society (1975), 421 U.S. 240, 95 S. Ct. 1612, 44 L. Ed. 2d 141; Fleischmann Distilling Corp. v. Maier Brewing Co. (1967), 386 U.S. 714, 87 S. Ct. 1404, 18 L. Ed. 2d 475; Hobbs v. McLean (1886), 117 U.S. 567, 6 S. Ct. 870, 29 L. Ed. 940; Central Railroad & Banking Co. v. Pettus (1885), 113 U.S. 116, 5 S. Ct. 387, 28 L. Ed. 915. These common fund doctrine cases provide that when a party has an interest in a fund in common with others and incurs legal fees in order to establish, preserve, increase, or collect that fund, then that party is entitled to reimbursement of his or her reasonable attorney fees from the proceeds of the fund itself.
In Means v. Montana Power Co. (1981), 191 Mont. 395, 625 P.2d 32, we recognized that the common fund doctrine is “rooted in the equitable concepts of quasi-contract, restitution and recapture of unjust enrichment.” Means, 191 Mont. at 403, 625 P.2d at 37. Furthermore, we expressly adopted the common fund doctrine and concluded that:
The “common fund” concept provides that when a party through active litigation creates, reserves or increases a fund, others sharing in the fund must bear a portion of the litigation costs including reasonable attorney fees. The doctrine is employed to spread the cost of litigation among all beneficiaries so that the active beneficiary is not forced to bear the burden alone and the “stranger” (i.e., passive) beneficiaries do not receive their benefits at no cost to themselves.
Means, 191 Mont. at 403, 625 P.2d at 37.
Application of the common fund doctrine is especially appropriate in a case like this where the individual damage from an *223 institutional wrong may not be sufficient from an economic viewpoint to justify the legal expense necessary to challenge that wrong. The alternative to the doctrine’s application is simply for the wrong to go uncorrected.
Based on these legal principles and authorities, we conclude that when a party, through active litigation, creates a common fund which directly benefits an ascertainable class of non-participating beneficiaries, those non-participating beneficiaries can be required to bear a portion of the litigation costs, including reasonable attorney fees. Accordingly, the party who creates the common fund is entitled, pursuant to the common fund doctrine, to reimbursement of his or her reasonable attorney fees from that fund.
Claimants have engaged in complex, lengthy, and expensive litigation. As a result, they were able to establish, in Murer II, a legal precedent which directly benefits a substantial number of workers’ compensation claimants who were neither parties to, nor directly involved in the Murer litigation. However, claimants have also accomplished significantly more than just the establishment of a favorable legal precedent. Additionally, claimants established a vested right on behalf of the absent claimants to directly receive immediate monetary payments of past due benefits underpayments; and based on the establishment of those vested rights, the State Fund became legally obligated to make the increased benefits payments.
In order to implement the mandate of Murer II, the State Fund, under supervision of the Workers’ Compensation Court: (1) identified a substantial number of absent claimants; (2) notified those claimants of their rights pursuant to Murer II; (3) calculated, with mathematical certainty, the increases to which each individual absent claimant is entitled; and (4) made actual payments to those claimants. The State Fund, therefore, has been able to determine, with certainty, the number of absent claimants involved and the amount of money to which each individual claimant is entitled. Accordingly, as a direct result of claimants’ litigation efforts, a substantial number of absent claimants have received direct monetary benefits payments, even though they were not required to intervene, file suit, risk expense, or hire an attorney.
Moreover, claimants filed a lien on the increased benefits payments made by the State Fund to absent claimants. In recognition of that lien, the State Fund withheld 20 percent from the payments which have actually been disbursed to the individual absent claimants. In essence, therefore, claimants request that they be awarded *224 a reasonable percentage of the amounts which have actually been paid to an identifiable class of absent claimants.
Based on the facts in this case, we conclude that claimants, through active litigation, created a common fund which has directly benefitted an ascertainable class of absent workers’ compensation claimants and, therefore, that those absent claimants should be required to contribute, in proportion to the benefits they actually received, to the costs of the litigation, including reasonable attorney fees. Accordingly, we hold that the Workers’ Compensation Court erred when it denied claimants’ motion and refused to award them reasonable attorney fees pursuant to the common fund doctrine. The judgment of the Workers’ Compensation Court to the contrary is reversed.
CROSS-APPEAL ISSUE 1
Did the Workers’ Compensation Court err when it concluded that an impairment award, paid in the form of a lump sum before June 30,1991, at the request of Claimant Keith Mordja, must be increased pursuant to Murer III
Claimant Keith Mordja was injured on January 17,1988. On June 14, 1990, he was found to have achieved maximum healing and his physician evaluated his physical impairment at 30 percent. That rating entitled him, pursuant to § 39-71-703, MCA (1987), to an impairment award of 150 weeks at the maximum statutory rate. He elected to receive his impairment award in a lump sum and received the balance on July 10,1990. Pursuant to § 39-71-703(l)(a)(iii), MCA (1987), his lump sum award was reduced to present value. The calculation by which the State Fuad reduced his award to present value utilized a period of 150 weeks, commencing June 14, 1990. Thus, 54.57 of the weeks occurred before July 1, 1991, and 95.43 of the weeks occurred after July 1, 1991.
Pursuant to our holding in Murer II that the 1987 and 1989 caps on maximum disability benefits were only temporary, Mordja sought an adjustment of his lump sum impairment award to reflect the increased rate. The State Fund, however, determined that the 1987 temporary cap did not expire until 1991 and, on that basis, refused to pay the increase for those weeks prior to July 1, 1991. The State Fund also refused to pay the increase for those weeks after July 1,1991, based on the fact that Mordja received his lump sum award on July 10,1990, which was prior to the 1991 expiration of the temporary caps.
Based on its determination that the 1987 temporary cap on benefits did not expire until 1991, the Workers’ Compensation Court *225 concluded that Mordja is not entitled to an increased impairment award for the 54.57 weeks prior to July 1,1991. The court, however, found that “[e]ven though all benefits were paid in a lump sum, 95.43 weeks of those benefits were attributable to July 1,1991 and thereafter.” On that basis, the court concluded that Mordja is entitled to an increased impairment award for the 95.43 weeks after July 1,1991.
On appeal, the State Fund contends that the Workers’ Compensation Court erred when it determined that Mordja is entitled to an increased award for the 95.43 weeks after July 1,1991. However, we conclude that the State Fund’s contention is now moot. In Issue 1 of this opinion, we concluded that the 1987 temporary cap on benefits expired, by its express terms, on June 30, 1989, and that the 1989 temporary cap applies only to injuries which occurred between July 17, 1989, and June 30, 1991.
Mordja’s injury occurred on January 17, 1988, and therefore, the 1987 temporary cap governs his claim. See Chagnon, 259 Mont. at 25, 855 P.2d at 1004. The actual payment of his lump sum award, however, did not occur until July 10, 1990, more than one year after the 1987 cap expired. Moreover, the 1989 cap cannot be applied retroactively to an injury which occurred before July 17, 1989, the date on which it became effective. See Buckman, 224 Mont. at 328, 730 P.2d at 386.
Therefore, we conclude that the temporary cap on Mordja’s disability benefits expired June 30,1989, and that, concomitantly, his entire 150-week benefit package, which was paid after the applicable 1987 temporary cap expired, must be calculated at the maximum statutory rate and is not subject to the temporary cap on benefits. On that basis, we hold that the Workers’ Compensation Court: (1) did not err when it concluded that Mordja is entitled to an increase in his impairment award for the 95.43 weeks after July 1, 1991; and (2) erred when it concluded that Mordja is not entitled to an increase for the 54.57 weeks prior to July 1, 1991. Accordingly, that part of the judgment of the Workers’ Compensation Court is affirmed in part and reversed in part.
CROSS-APPEAL ISSUE 2
Did the Workers’ Compensation Court err when it determined that the State Fund’s refusal to increase Mordja’s impairment award was unreasonable and, on that basis, assessed a penalty pursuant to § 39-71-2907, MCA?
*226 Whether an action is “unreasonable” pursuant to § 39-71-2907, MCA, is a “question of fact which is subject on appeal to the limited review of the substantial evidence test. If there is substantial evidence to support a finding of‘unreasonableness’, this Court cannot overturn the finding.” Wight v. Hughes Livestock Co., Inc. (1981), 194 Mont. 109, 115, 634 P.2d 1189, 1192; see also Marcott v. Louisiana Pacific Corp. (1996), 275 Mont. 197, 203, 911 P.2d 1129, 1133 (“reasonableness”).
The Workers’ Compensation Court determined that:
The State Fund’s refusal to pay the additional benefits was unreasonable. More than 95 weeks of the benefits were attributable to the time period after the temporary cap had expired. In paying the benefits in a lump sum the State Fund discounted the future benefits to present value (See § 39-71-703(l)(a)(iii), MCA (1987)), thus acknowledging that the benefits were attributable to the later time. The matter was not reasonably debatable.
On that basis, the court assessed a 20 percent penalty in the amount of $191.32 pursuant to § 39-71-2907, MCA.
We conclude that the Workers’ Compensation Court’s findings are supported by substantial evidence. Accordingly, we hold that the court did not err when it concluded that the State Fund’s failure to increase Mordja’s impairment award was unreasonable and, on that basis, assessed a 20 percent penalty pursuant to § 39-71-2907, MCA. That part of the judgment of the Workers’ Compensation Court is affirmed.
For these reasons, and based on these conclusions, this case is remanded to the Workers’ Compensation Court for further proceedings consistent with this opinion.
JUSTICES HUNT, REGNIER, LEAPHART and NELSON concur.