No. 00-749

IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 314

MOUNTAIN WEST FARM BUREAU

MUTUAL INSURANCE COMPANY,

Plaintiff,

v.

WALLACE HALL, GLENN HALL and KELTZ HALL,

Defendants,

v.

MARTIN KILMER and CAROLYN KILMER,

Defendants and Appellants,

v.

MEDCENTER ONE, INC.,

Defendant and Respondent.

APPEAL FROM: District Court of the Seventh Judicial District,

In and for the County of Richland,

The Honorable Richard G. Phillips, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Gene R. Jarussi (argued), Jarussi & Bishop, Billings, Montana; Thomas Dickson, Dickson Law Firm, Bismarck, North Dakota

For Respondents:

Jacque Best (argued), Michael Johnson (argued), Habedank Law Firm, Sidney, Montana; Timothy Lervick, Rolfson, Schultz, Lervick & Geiermann, Bismarck, North Dakota

For Amicus Curiae:

Katharine S. Donnelley, Brand Boyar, Browning, Kaleczyc, Berry & Hoven, Helena, Montana (Association of Montana Health Care Providers)

Heard: June 19, 2001

Submitted: June 19, 2001

Decided: December 31, 2001

Filed:

_____

Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 Martin and Carolyn Kilmer (Kilmers) appeal from an order issued by the Seventh Judicial District Court, Richland County, granting Medcenter One, Inc.'s (Medcenter) motion for partial summary judgment. The District Court's order precluded Kilmers from recovering Medcenter's alleged pro rata share of attorney fees from a settlement fund subject to Medcenter's lien. We reverse and remand.

¶2 We restate the sole issue on appeal as follows:

Does our opinion in *Sisters of Charity v. Nichols* preclude application of the common fund doctrine to the case at bar?

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 On April 1, 1999, Martin Kilmer was a passenger in a vehicle driven by Keltz Hall on a North Dakota highway. Hall lost control of the vehicle and Martin suffered severe injuries as a result of the single vehicle accident. Martin received medical attention from Medcenter, a North Dakota hospital. Despite Medcenter's efforts, Martin's injuries rendered him a quadriplegic. Medcenter perfected a hospital lien in North Dakota and Montana for the value of its services, approximately $309,000.

¶4 Hall possessed no vehicle, homeowners', or farm and ranch insurance coverage. However, Hall's father Wallace, co-owner of the vehicle Hall was operating, did have a motor vehicle insurance policy through Mountain West Farm Bureau (Mountain West). This policy had a maximum limit of $500,000 with an additional $30,000 in no-fault coverage. The policy contained a step-down provision which limited Mountain West's liability to $25,000 per person for passengers other than the named insured or a relative of the named insured.

¶5 Initially, Mountain West claimed Kilmers were entitled to only $25,000 under Wallace's policy pursuant to the step-down provision. However, after negotiating with Kilmers' attorney, Mountain West agreed to proffer the policy limits of $530,000. On October 29, 1999, Mountain West filed a complaint for interpleader naming the above captioned parties and subsequently tendered $530,000 to the District Court. Medcenter cross-claimed against Kilmers seeking satisfaction of its lien. Kilmers cross-claimed against Medcenter seeking reduction in Medcenter's recovery for a pro rata portion of their attorney fees incurred in negotiating Mountain West's $530,000 tender. Upon stipulation of the parties, the District Court subsequently dismissed Defendants Wallace Hall, Glenna Hall, and Keltz Hall from the action.

¶6 On December 29, 1999, Medcenter moved for partial summary judgment, arguing it was not liable for a pro rata portion of Kilmers' attorney fees. Following a June 13, 2000, hearing, the District Court concluded that the facts existing herein are indistinguishable from those in *Sisters of Charity v. Nichols* (1971), 157 Mont. 106, 483 P.2d 279. Concluding that *Nichols* is still controlling law in Montana, the District Court granted Medcenter's motion and entered judgment for Medcenter. Kilmers appeal the District Court's summary judgment ruling.

## STANDARD OF REVIEW

¶7 Our standard of review in appeals from summary judgment rulings is de novo. *Motarie v. Northern Mont. Joint Refuse Disposal Dist.* (1995), 274 Mont. 239, 242, 907 P.2d 154, 156. We review a district court's summary judgment to determine whether it was correctly decided pursuant to Rule 56, M.R.Civ.P., which provides that summary judgment is appropriate only when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *See Motarie*, 274 Mont. at 242, 907 P.2d at 156.

¶8 Here, the parties do not present disputed factual issues on appeal. Thus, our role is to determine, as did the District Court, whether Medcenter is entitled to judgment as a matter of law. In essence, we need only determine whether the District Court's conclusion regarding the applicability of this Court's case law is correct.

## DISCUSSION

¶9 **Does our opinion in *Sisters of Charity v. Nichols* preclude application of the common fund doctrine to the case at bar?**

¶10 Section 71-3-1114(1)(b), MCA (1999), provides that a hospital has a lien for the value of services rendered on:

> (i) any claim or cause of action that the injured person or the injured person's estate or successors may have for injury, disease, or death;
>
> (ii) any judgment that the injured person or the estate or successors may obtain for injury, disease, or death; and
>
> (iii) all money paid in satisfaction of the judgment or in settlement of the claim or cause of action.
>
> Both parties agree that pursuant to § 71-3-1114(1)(b), MCA (1999), Medcenter has a valid lien for the medical services rendered to Martin Kilmer immediately following his accident. However, § 71-3-1114, MCA (1999), is silent on the issue of attorney fee apportionment.

¶11 In the 2001 session, the Montana Legislature amended § 71-3-1114, MCA, to address a hospital's pro rata liability for an injured person's attorney fees. Section 71-3-1114(3), MCA, now states:

> A . . . hospital . . . claiming a lien under this part is not liable for attorney fees and costs incurred by the injured person, the injured person's estate or successors, or a beneficiary in connection with obtaining payments or benefits subject to a lien under this part.

The statute contains no express retroactive application provision.

¶12 Pursuant to § 1-2-201, MCA, every statute adopted after January 1, 1981, takes effect on the first day of October following its passage and approval unless the enacting legislation prescribes otherwise. As § 71-3-1114, MCA (2001), contains no express effective date prescription, both parties agree it has an October 1, 2001, effective date. Further, no Montana law is retroactive unless the statute expressly so declares. Section 1-2-109, MCA. Since § 71-3-1114, MCA (2001), contains no retroactive provision and all of the relevant events pertaining to Kilmers' claim occurred prior to October 1, 2001, § 71-3-1114, MCA (1999), applies to the case at bar. However, as previously stated, § 71-3-1114, MCA (1999), contains no attorney fee apportionment provision.

¶13 Montana follows the general American rule that a party in a civil action is not entitled to attorney fees absent a specific contractual or statutory provision. *School Trust v. State ex rel. Bd. of Com'rs*, 1999 MT 263, ¶ 62, 296 Mont. 402, ¶ 62, 989 P.2d 800, ¶ 62. However, we have recognized equitable exceptions to the American rule. *See*, *e.g.*, *Foy v. Anderson* (1978), 176 Mont. 507, 511, 580 P.2d 114, 117, and *Holmstrom Land Co. v. Hunter* (1979), 182 Mont. 43, 48-49, 595 P.2d 360, 363 (affirming award of attorney fees on equitable grounds despite absence of specific contractual or statutory grant); *Goodover v. Lindey's, Inc.* (1992), 255 Mont. 430, 447, 843 P.2d 765, 775 (recognizing limited equitable exception to general rule when party is "forced into a frivolous lawsuit").

¶14 One of the recognized equitable exceptions to the American rule is the common fund doctrine. Generally, this doctrine authorizes the spread of fees among those individuals benefitting from the litigation which created the common fund. *See Morris B. Chapman & Assocs., LTD. v. Kitzman* (Ill. 2000), 739 N.E.2d 1263, 1271. In *Means v. Montana Power Co.* (1981), 191 Mont. 395, 403, 625 P.2d 32, 37, this Court adopted the common fund doctrine, concluding:

> The "common fund" concept provides that when a party through active litigation creates, reserves or increases a fund, others sharing in the fund must bear a portion of the litigation costs including reasonable attorney fees. The doctrine is employed

to spread the cost of litigation among all beneficiaries so that the active beneficiary is not forced to bear the burden alone and the "stranger" (i.e., passive) beneficiaries do not receive their benefits at no cost to themselves.

The doctrine entitles the party who created the fund to reimbursement of his or her reasonable attorney fees from the common fund. *Murer v. State Comp. Mut. Ins. Fund* (1997), 283 Mont. 210, 223, 942 P.2d 69, 76. Our decisions in *Means* and *Murer* outline the three elements necessary to establish a common fund.

¶15 First, one party must create, reserve, or increase a common fund. This party is typically referred to as the active beneficiary. The fund must be an existing, identifiable monetary fund or benefit to which all of the beneficiaries maintain an interest.

¶16 Second, the active beneficiary must incur legal fees in establishing the common fund. Medcenter insists the active beneficiary must initiate "active litigation" to satisfy this element. Since Kilmers did not bring suit against Mountain West to establish the fund, Medcenter argues Kilmers failed to satisfy the active litigation requirement.

¶17 Medcenter derived this active litigation language from our decisions in *Means* and *Murer*. However, in *Murer*, the language preceding the "active litigation" reference appears to dispel Medcenter's argument. We stated:

> The United States Supreme Court created the common fund doctrine in *Trustees v. Greenough* (1881), 105 U.S. 527, 15 Otto 527, 26 L.Ed. 1157, and has subsequently applied that doctrine in numerous other cases (citations omitted). These common fund doctrine cases provide that when a party has an interest in a fund in common with others and incurs legal fees in order to establish, preserve, increase, or collect that fund, then that party is entitled to reimbursement of his or her reasonable attorney fees from the proceeds of the fund itself.

*Murer,* 283 Mont. at 222, 942 P.2d at 76. The cases cited in Murer merely illustrate the need to incur legal fees in pursuit of the common fund rather than engage in "active litigation." In Means and Murer, the active litigation was simply the expense-incurring mechanism employed by the parties to establish the common fund.

¶18 Third, and finally, the common fund must benefit ascertainable, non-participating beneficiaries. In *Means*, we referred to non-participating beneficiaries as inactive or

passive beneficiaries and defined them as those who fail to retain counsel, or those who retain counsel who fails to participate in the labors creating the common fund. *Means*, 191 Mont. at 404, 625 P.2d at 37. Further, to the extent there are inequities in contribution of participating counsel, the court may intervene to allocate fees accordingly. *See Means*, 191 Mont. at 404, 625 P.2d at 37.

¶19 Nevertheless, Medcenter argues, and the District Court agreed, that our decision in *Nichols* precludes application of the common fund doctrine to the case at bar. In *Nichols*, the defendant (Nichols) incurred approximately $2000 in medical expenses after being hit by an automobile. Nichols hired an attorney who filed a personal injury claim against the driver and negotiated a settlement for $5000. Meanwhile, the hospital perfected a lien for the medical services it provided to Nichols. Nichols' attorney attempted to deduct one-third of the hospital's $2000 lien, claiming the hospital was liable for a pro rata portion of Nichols' attorney fees incurred in procuring the settlement. Nichols sought to remit the remaining two-thirds to the hospital in full satisfaction of the hospital's lien. The hospital filed suit seeking, among other things, judgment against Nichols for the full amount of the hospital bill. The district court entered judgment for the hospital.

¶20 On appeal, Nichols proffered two theories in support of her attorney fee apportionment position. First, Nichols claimed that an implied contract existed between the hospital and her attorneys for their services and compensation. This Court dismissed the implied contract argument, stating:

> The fact that an incidental benefit was also received by the hospital from her attorneys' services in the form of settlement proceeds from which its bill could be paid does not, in itself, create an implied contract by the hospital to pay her attorneys for their services.

*Nichols,* 157 Mont. at 111-12, 483 P.2d at 283. Second, Nichols argued the hospital was obligated to pay a pro rata share of the attorney fees much like a subrogated insurer is obligated to share attorney fees and costs with its insured in recovering against a third party. We rejected this subrogation analogy based on the inherently different positions occupied by a subrogated insurance company and a hospital lien holder. We stated:

> The obligation of the subrogated insurer to share in the costs of recovery from a third party wrongdoer arises because the insurer occupies the position of the insured with coextensive rights and liabilities and no creditor-debtor relationship between

them. But here, unlike that situation, the hospital's claim and lien is based upon a debt owed the hospital by its patient in whose shoes it does not stand for any purpose, the debt being owed to it by its patient irrespective of the patient's rights against a third party wrongdoer. Because the substitution principle does not apply here, no obligation arises on the part of the hospital to share in the costs of recovery against a third party, and the attempted analogy fails.

*Nichols,* 157 Mont. at 112-13, 483 P.2d at 283. Therefore, we affirmed the district court's judgment in favor of the hospital.

¶21 Here, Medcenter analogizes Kilmers' common fund argument to those arguments posited in *Nichols*. Medcenter insists *Nichols* is dispositive to the case at bar. However, in *Nichols*, this Court addressed only those implied contract and subrogation issues advanced by the parties. As neither party raised the common fund issue in *Nichols*, this Court had no reason to, and did not, analyze the issues in *Nichols* in the context of the common fund doctrine. Kilmers acknowledge that *Nichols* would bar an apportionment claim brought on an implied contract or subrogation theory. However, Kilmers insist the common fund doctrine presents entirely different legal issues. We agree. Therefore, we hold that *Nichols* does not preclude application of the common fund doctrine to the case at bar.

¶22 Finally, at oral argument, Medcenter argued that the legislative hearings held in contemplation of § 71-3-1114, MCA (2001), evince a clear legislative intent to prohibit our application of the common fund doctrine to the medical services arena. Medcenter suggests that we should impute the 2001 legislative intent to § 71-3-1114, MCA (1999). To support this proposition Medcenter cites *Fergus Motor Co. v. Sorenson* (1925), 73 Mont. 122, 235 P. 422.

¶23 In *Fergus,* this Court stated:

> If it can be gathered from a subsequent statute in pari materia what meaning the Legislature attached to the words of a former statute, they will amount to a legislative declaration of its meaning, and will govern the construction of the first statute.

*Fergus,* 73 Mont. at 132, 235 P. at 425. Historically, in pari materia statutes were statutes consistent with one another that referred to the same subject matter. See In re Clark's Estate (1937), 105 Mont. 401, 409, 74 P.2d 401, 405. Statutes in pari materia should be

construed together and effect given to both if it is possible to do so. Register Life Ins. Co. v. Kenniston (1935), 99 Mont. 191, 197, 43 P.2d 251, 254. Presumably, Medcenter believes the 2001 and 1999 statutes are consistent with one another. We disagree.

¶24 The two statutes do address the same subject matter and are consistent with one another *except* for one provision-the attorney fee provision at issue here. The legislative intent embodied in the 2001 statute fails to inform us of the "meaning the Legislature attached to the words of [the] former statute," because the 1999 statute does not address attorney fee apportionment. The statutes are not consistent with regard to a medical service provider's liability for an injured party's attorney fees. Therefore, Medcenter's in pari materia argument is without merit.

¶25 For the foregoing reasons, we hold that the District Court erred as a matter of law in relying on *Nichols* to grant Medcenter's motion for partial summary judgment. As the issue on appeal focused primarily on *Nichols'* application to this case, the parties did not present arguments on whether Kilmers can satisfy those elements of the common fund doctrine discussed herein. Therefore, we decline to rule on the doctrine's application to the case at bar as the dissent suggests we should. Instead, and as requested by Kilmers, we reverse and remand to allow Kilmers to present arguments in the District Court for the application of the common fund doctrine in this case.

/S/ PATRICIA COTTER

We Concur:

/S/ KARLA M. GRAY

/S/ JAMES C. NELSON

/S/ JIM REGNIER

/S/ TERRY N. TRIEWEILER

/S/ W. WILLIAM LEAPHART

Justice Jim Rice, dissenting.

¶26 I respectfully dissent from the Court's decision in this matter, believing it to be an

inadequate response to the issue presented.

¶27 The Appellants raise the issue of whether equities require application of the common fund doctrine to a hospital lien holder. The Court, however, chooses to address only the question of whether the holding in *Nichols* precludes application of the common fund doctrine. Finding it does not, the Court, rather than resolving the issue raised on appeal, remands the case to the District Court for another try.

¶28 I do not disagree with the Court's conclusion that *Nichols*, by itself, does not preclude application of the common fund doctrine. *Nichols* predates *Means*, and the doctrine was neither argued nor discussed therein. However, the Court further holds that *Nichols* is wholly irrelevant to further consideration of the issue, and cannot be relied on as authority. The Court states:

> Kilmers insist the common fund doctrine presents entirely different legal issues. We agree. Therefore, we hold that *Nichols* does not preclude application of the common fund doctrine to the case at bar.
>
> . . . .
>
> For the foregoing reasons, ***we hold that the District Court erred as a matter of law in relying on Nichols*** to grant Medcenter's motion for partial summary judgment. As requested by Kilmers, we reverse and remand to allow Kilmers to present arguments in the District Court for the application of the common fund doctrine in this case.

¶¶ 21, 25 (emphasis added).

¶29 The Court errs in holding that *Nichols* is irrelevant. Contrary to the Court's statement, the common fund doctrine does not present entirely different issues. The Court cites to both *Means* and *Murer* for authority, but fails to discuss the entirety of those holdings. In both cases, this Court held that the common fund doctrine is "rooted in the equitable concept[ ] of quasi-contract . . ." *Murer*, 283 Mont. at 222, 942 P.2d at 76. Contract principles are thus an indispensable consideration in determining the applicability of the common fund doctrine -just as they were in *Nichols*, where this Court found that there was no implied contract which compelled sharing of attorneys' fees. *Nichols*, while not necessarily controlling, is nonetheless analogical authority. However, the Court, by

erasing *Nichols*[1], removes our case law's most significant discussion of contract principles related to the attorney-hospital conflict at issue here.

¶30 It is this Court's duty to determine the parameters of the common fund doctrine when asserted against a statutory hospital lien. It should do so, either expanding the rule of *Nichols*, or distinguishing *Nichols,* in accordance with its determination. Here, the Court removes one piece from the puzzle box, and then sends the puzzle to the District Court to put together. Because all facts relevant to the issue are of record, and nothing is to be gained by remanding the case back to the District Court for a second try, I would decide the issue raised by Appellants.

¶31 In response to this dissent, the Court offers that the parties did not present arguments regarding the common fund doctrine. That is not correct. The solitary issue presented in Kilmers' brief was whether the doctrine applied. Their summary of argument stated as follows:

> It is Kilmers' position that the underlying facts make the present case an appropriate case to apply the common fund doctrine, spreading the costs of litigation among those who benefitted from it. In addition, it is Kilmers' position that *Nichols* is not applicable in the present case because it is legally and factually distinguishable.

Further, the relief requested in their brief's conclusion was for this Court to find that the common fund doctrine was applicable, and to vacate the judgment in favor of MedCenter. Kilmers then asked that the matter be remanded only for the trial court to calculate MedCenter's pro rata share of fees and costs. In response to Kilmers' presentation of this issue, MedCenter's brief argued against application of the doctrine for some 16 pages in its brief. I would reach the merits of the issue raised.

/S/ JIM RICE

1. The Court does not state that *Nichols* is overruled, only that *Nichols* cannot be relied upon when the common fund doctrine is asserted.