No. 01-475

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 279

ROBERT FLYNN,

     Petitioner and Appellant,

  v.

STATE COMPENSATION INSURANCE FUND,

     Respondent/Insurer and Respondent for

SALISH KOOTENAI COLLEGE,

     Employer.

APPEAL FROM:    Workers' Compensation Court, State of Montana
                The Honorable Mike McCarter, Judge presiding.

COUNSEL OF RECORD:

     For Appellant:

     Rex Palmer, Attorney at Law, Missoula, Montana

     For Respondent:

     Ann E. Clark, Special Assistant Attorney General, State Compensation
     Insurance Fund, Helena, Montana

Submitted on Briefs: January 17, 2002

Decided: December 5, 2002

FILED

DEC - 5 2002

Filed: *Ed Smith*
CLERK STATE OF MONTANA

_____
Clerk

Justice Terry N. Trieweiler delivered the Opinion of the Court.

¶1    The Claimant, Robert Flynn, filed a petition in the Workers' Compensation Court for the State of Montana in which he alleged that the Respondent, State Compensation Insurance Fund, should pay a proportionate share of the attorney fees he incurred to recover social security disability benefits. Flynn also requested that the Court sanction the State Fund for unreasonably reducing his temporary total disability benefits in an effort to recoup overpayments. The Workers' Compensation Court denied both of Flynn's claims and Flynn appeals. We affirm in part and reverse in part the judgment of the Workers' Compensation Court.

¶2    We address the following issues on appeal:

¶3    1. Should the State Fund bear a proportionate share of the attorney fees incurred by Flynn to recover social security disability benefits based on the common fund doctrine?

¶4    2. Was the State Fund entitled to reduce Flynn's workers' compensation benefits to recover overpaid benefits?

## FACTUAL BACKGROUND

¶5    On June 23, 1993, Robert Flynn was diagnosed with an occupational disease which developed as a result of repetitive work activities associated with his job at the Salish Kootenai College in Lake County, Montana. At all relevant times, the College was enrolled in Compensation Plan Number Three of the Workers' Compensation Act and insured by the State Fund. Following his diagnosis, Flynn filed a claim for compensation and the State Fund accepted liability and tendered medical and temporary total disability (TTD) benefits

to Flynn. Flynn has remained totally disabled since 1993 and the State Fund recently conceded that Flynn is permanently totally disabled (PTD).

¶6 Sometime prior to 1996, Flynn also filed a claim for social security disability (SSD) benefits. His claim was initially denied but later awarded retroactively by an administrative law judge for the Social Security Administration. On February 8, 1996, after learning of the SSD award, the State Fund advised Flynn that it was going to reduce his biweekly benefits from $336.00 to $217.59, effective February 7, 1996. The State Fund also notified Flynn that because of the retroactive application of the SSD award, it intended to recoup $14,006.25 in overpaid benefits by an additional offset against Flynn's TTD benefits. However, the State Fund did not implement the offset until September of 2000. As a result, Flynn was overpaid an additional $947.28.

¶7 On September 26, 2000, the State Fund notified Flynn of its intent to recoup $14,984.58 and began deducting an additional $49.86 from Flynn's weekly benefits. Flynn requested that the State Fund postpone its recoupment plan until May of 2001. The State Fund agreed to suspend the additional offset until April 24, 2001, at which time it would resume recoupment at the rate of $54.64 per week.

¶8 On October 30, 2000, Flynn filed a petition for hearing with the Workers' Compensation Court. The petition requested that the Court: 1) order the State Fund to pay a proportionate share of the attorney fees incurred to recover the SSD benefits; and 2) sanction the State Fund for unreasonably and unlawfully reducing Flynn's TTD benefits. On May 18, 2001, the Workers' Compensation Court denied Flynn's petition.

3

¶9    The parties submitted an Agreed Statement of Facts to the Workers' Compensation Court, and requested that the Court decide the legal issues presented by the parties. We review the Workers' Compensation Court's conclusions of law to determine whether they are correct. *Matthews v. State Compensation Ins. Fund*, 1999 MT 225, ¶ 5, 296 Mont. 76, ¶ 5, 985 P.2d 741, ¶ 5.

## DISCUSSION

## ISSUE 1

¶10    Should the State Fund bear a proportionate share of the attorney fees incurred by Flynn to recover social security disability benefits based on the common fund doctrine?

¶11    Sometime prior to 1996, Flynn submitted a claim for SSD benefits which the Social Security Administration denied. Subsequently, Flynn incurred approximately $4,000 in attorney fees to recover those benefits. Flynn contends that the State Fund benefitted from his SSD award as much as he did because it can now reduce the disability benefits paid to him by one-half the amount of the SSD award, and that it should therefore bear a proportionate share of the $4,000 attorney fee based on the common fund doctrine.

¶12    The Workers' Compensation Court rejected Flynn's attorney fee claim for three reasons. First, it cited *Stahl v. Ramsey Const. Co.* (1991), 248 Mont. 271, 811 P.2d 546, for the proposition that no statutory or contractual authority supports Flynn's apportionment claim. Second, the Court relied on *Murer v. State Comp. Mut. Ins. Fund* (1997), 283 Mont. 210, 942 P.2d 69, for its conclusion that the common fund doctrine "has no application here

[because] Claimant is not seeking attorney fees for others who may benefit by this decision, rather he is seeking attorney fees with respect to his own entitlement." Finally, the Court based its decision on statutory preemption. Citing *ISC Distributors, Inc. v. Trevor* (1995), 273 Mont. 185, 202, 903 P.2d 170, 180, the Workers' Compensation Court held that "[w]here a conflict arises between the common law and a statute, the common law must yield."

¶13    In *Stahl*, the claimant incurred attorney fees to recover SSD benefits and the Social Security Administration withheld a percentage of the award for direct payment of his attorney fees. Following the claimant's SSD award, the State Fund determined that it was entitled to offset its future payment of benefits to account for the retroactive SSD award. The claimant contended that since he had not received the amount withheld for fees, it should not be included in the overpayment calculation.

¶14    This Court denied Stahl's request to, in effect, apportion costs and attorney fees because no statutory or contractual authority existed for doing so. *Stahl*, 248 Mont. at 275, 811 P.2d at 548. However, Stahl presented a different theory for relief than is presented by Flynn. Stahl did not argue for application of the common fund doctrine. Therefore, this Court did not analyze the applicability of the common fund doctrine in *Stahl*. Accordingly, *Stahl* is not dispositive.

¶15    Generally, the common fund doctrine authorizes assigning responsibility for fees among those individuals who benefit from the litigation which created the common fund. *See Morris B. Chapman & Assocs., LTD. v. Kitzman* (Ill. 2000), 739 N.E.2d 1263, 1271. The

doctrine entitles the party who created the fund to reimbursement of his or her reasonable attorney fees from the common fund. *Murer*, 283 Mont. at 223, 942 P.2d at 76. Recently, in *Mountain West Farm Bureau v. Hall*, 2001 MT 314, ¶¶ 15-18, 308 Mont. 29, ¶¶ 15-18, 38 P.3d 825, ¶¶ 15-18, we summarized the elements of the common fund doctrine as follows: 1) an active beneficiary must create, reserve, or increase a common fund; 2) the active beneficiary must incur legal fees in establishing the common fund; and 3) the common fund must benefit ascertainable, non-participating beneficiaries. We enforce this doctrine because equity demands that all parties receiving a benefit from the common fund share in the cost of its creation. *See Means v. Montana Power Co.* (1981), 191 Mont. 395, 405, 625 P.2d 32, 38.

¶16    With the aid of counsel, Flynn recovered SSD benefits in the approximate amount of $1000 per month. It is uncontroverted that Flynn incurred attorney fees to recover this award. This SSD award enabled the State Fund to reduce Flynn's weekly TTD benefits, and subsequent PTD benefits, by "one-half the federal periodic benefits for the week" pursuant to §§ 39-71-701(5) and -702(4), MCA. As a result of Flynn's litigation efforts, funds were recovered which accrued to the substantial benefit of the State Fund. While the State Fund reaped the benefit of Flynn's efforts, it was not required to intervene, risk expense, or hire an attorney throughout the litigation proceedings. Consequently, we hold that Flynn's SSD award constitutes an existing, identifiable monetary fund or benefit in which an ascertainable, non-participating beneficiary maintains an interest.

¶17 The Workers' Compensation Court correctly cited the general rule of statutory preemption. We agree that the common law is preempted where the law is statutorily declared. *See* § 1-1-108, MCA; *Brewington v. Employers Fire Ins. Co.* (1999), 297 Mont. 243, 248, 992 P.2d 237, 241. However, the Workers' Compensation Act is silent on the issue of attorney fee apportionment following benefit recoupment. Therefore, there exists no statutory declaration which preempts the equitable principles of the common fund doctrine.

¶18 Accordingly, pursuant to the common fund doctrine, the State Fund should contribute, in proportion to the benefits it actually received, to the costs of the litigation, including reasonable attorney fees. The Workers' Compensation Court erred when it denied Flynn's request for reasonable apportionment of attorney fees. To the extent it declined to apply the common fund doctrine, the judgment of the Workers' Compensation Court is reversed.

ISSUE 2

¶19 Was the State Fund entitled to reduce Flynn's workers' compensation benefits to recover overpaid benefits?

¶20 In 1993 the Legislature amended §§ 39-71-701 and -702, MCA, to authorize insurers to suspend biweekly compensation benefits to recover overpayment from those claimants who receive social security benefits. However, the law in effect at the time of a work-related injury governs the determination of workers' compensation benefits and the respective rights of the insurer and employer. *Buckman v. Montana Deaconess Hosp.* (1986), 224 Mont. 318, 321, 730 P.2d 380, 382. Flynn was diagnosed with the occupational disease in June of 1993,

7

prior to the amendments' July 1, 1993, effective date. Therefore, the 1991 version of the Workers' Compensation Act governs the disposition of Flynn's claim.

¶21 Flynn cites *State ex rel. Mazurek v. District Court*, 2000 MT 266, ¶ 18, 302 Mont. 39, ¶ 18, 22 P.3d 166, ¶ 18, for the proposition that when the Legislature amends a statute, this Court will presume that it intended to implement some change in the existing law. Flynn argues that the Legislature's 1993 amendments imply that an insurer's unfettered right of recoupment did not exist prior to July 1, 1993. Relying on a 1993 judgment from the Workers' Compensation Court, Flynn insists that prior to July 1, 1993, an insurer could not unilaterally suspend benefits to recoup overpayments absent a court order or the injured claimant's consent. Flynn maintains that the State Fund had neither and, therefore, was not entitled to terminate or reduce his benefits to recover an alleged overpayment.

¶22 The Workers' Compensation Court rejected Flynn's characterization of the state of the law on overpayment recoupment in 1991. In so doing, the Court stated:

> The [*Mackney*] decision . . . lends no support whatsoever to the claimant's position. There is nothing in the decision stating that an insurer cannot unilaterally reduce a claimant's benefits to recoup a SSD offset. . . . The law is clear that an insurer is entitled to offset SSD benefits. That law puts claimants on notice that if they receive retroactive benefits, the offset will apply.
>
> . . . .
>
> Claimant, however, urges that . . . an insurer lacked authority prior to July 1, 1993, to unilaterally reduce benefits to recoup the offset. The argument is without merit. The new [amendments] sanction **suspension of all benefits** to recoup the offset, which is the most extreme possible method of recoupment. There is nothing in the adoption of the section indicating that the legislature

8

believed that insurers were prohibited from lesser measures of recoupment, and nothing in the prior statutes which precluded such lesser measures.

¶23 The 1991 Workers' Compensation Act authorized insurers to offset benefit distributions on account of an SSD award in § 39-71-701(5), MCA (1991), which provided:

> In cases where it is determined that periodic disability benefits granted by the Social Security Act are payable because of the injury, the weekly benefits payable under this section are reduced, but not below zero, by an amount equal, as nearly as practical, to one-half the federal periodic benefits for such week, which amount is to be calculated from the date of the disability social security entitlement.

The purpose of the workers' compensation offset statutes is to prevent duplication of disability pay. *Watson v. Seekins* (1988), 234 Mont. 309, 314-15, 763 P.2d 328, 332. Prior to 1993, the Workers' Compensation Act failed to address the recovery of prior payments which become duplicate by virtue of a subsequent retroactive SSD award. However, what once was a procedural vacuum has now been statutorily defined. Nevertheless, the 1993 legislative enactments do not transform the prior silence into a prohibition on recovery of overpayments.

¶24 Had the Social Security Administration accepted Flynn's initial claim, the State Fund could have reduced its weekly payments pursuant to § 39-71-701(5), MCA (1991), from the time payments commenced. The fact that Flynn's SSD award was delayed should not preclude offset for the same amount. To accept Flynn's construction of the 1991 Workers' Compensation Act would be to frustrate the policy against double recovery. Therefore, we conclude that the State Fund was entitled to suspend a portion of Flynn's benefits to recover the alleged overpayment.

¶25 Because the State Fund was entitled to offset Flynn's benefits, and the 1991 Workers' Compensation Act provides no methodology for recovering overpaid benefits, the only remaining question is whether the method employed by the State Fund was reasonable. In analyzing this same issue, the Workers' Compensation Court concluded:

> An insurer has an obligation to act reasonably with regard to payment of benefits. I do not determine that an insurer's unilateral offset for overpayments is in every case reasonable. I only determine that it is not per se unreasonable for an insurer to recoup overpayments despite a claimant's objections. In this case, claimant has not presented sufficient evidence to persuade me that the State Fund's offset for recoupment was unreasonable. [Citations omitted.]

We agree that nothing in the record indicates that the State Fund acted unreasonably in offsetting Flynn's benefits. Therefore, the Workers' Compensation Court did not err when it concluded that the State Fund was entitled to reduce Flynn's disbursements to the extent that it did to recover overpaid benefits.

¶26 The judgment of the Workers' Compensation Court is affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.

_____
                              Justice

We Concur:


_____
          Chief Justice


_____



_____
Justices


Justice W. William Leaphart did not participate in this Opinion.

Justice Jim Rice concurring in part and dissenting in part.

¶27 I concur with the Court's holding on Issue 2, but respectfully dissent from the Court's holding under Issue 1. This is not an appropriate case for the common fund doctrine, and its application here impinges on state statute.

¶28 First, there is no "common" fund. "[W]hen a party has an interest in a fund in common with others and incurs legal fees in order to establish" the fund, that party is entitled to reimbursement of legal fees. *Murer*, 283 Mont. at 222, 942 P.2d at 76. The State Fund was not a party in Flynn's SSD proceeding, made no claim against the Social Security Administration, and does not share a claim with Flynn. Flynn's SSD award is personal to him and all funds obtained thereunder are entirely under his control. The State Fund has no claim of entitlement to, or power to control the disbursement of, any funds paid to Flynn by the Social Security Administration.

¶29 Neither is there a common interest. Flynn successfully pursued a personal claim for Social Security disability benefits. The State Fund has no such claim, but rather, pursuant to §§ 39-71-701(5), and -702(4), MCA, is authorized to reduce payment of state statutory disability benefits in an amount of one-half of Flynn's federal benefits. Contrary to the Court's conclusion that this provision makes the State Fund an "ascertainable, non-participating beneficiary" to Flynn's Social Security benefits, the State Fund's status here is one of creditor. The Fund is not a beneficiary with a common claim to federal benefits.

12

¶30    In *Neal v. Stanislaus County* (1983), 141 Cal.App.3d 534, plaintiff attorney filed an action to compel the county to share payment of his attorney fees for recovery of Social Security income for his clients, who had received interim financial assistance from the county. Because his work resulted in the county being fully reimbursed amounts paid to his clients, the attorney claimed that the federal benefits constituted a common fund from which the county was paid as a passive beneficiary. He thus argued that the county was obligated to pay attorney fees in accordance with the benefits derived from the attorney's efforts, to avoid unjust enrichment.

¶31    The *Neal* court discussed the development of the common fund doctrine and noted particularly the existence of contractual obligations which furthered the doctrine. *Neal*, 141 Cal.App.3d at 538. It concluded that the county's interim financial assistance program created a debtor-creditor relationship which removed it from a common fund sharing of attorney fees. *Neal*, 141 Cal.App.3d at 538. In so doing, the court noted:

> The mere fact that defendant [county] benefits from plaintiff's efforts does not in itself entitle plaintiff to fees from defendant. In *County of Tulare v. City of Dinuba* [citation omitted], the Supreme Court stated:

> "The underlying principle in all the cases where one has been allowed compensation out of a common fund belonging to others for expenses incurred and services rendered on behalf of the common interest is the principle of representation or agency . . . . The fact that one may be benefitted by an action brought by another is not of itself sufficient to justify a court in assessing costs against the one who also profits by said action. Some contractual relation or some equitable reason sufficient to support an allowance of costs must be shown to exist to justify a court of equity in making such assessment."

13

> Here, there is no contractual relation or overriding equitable rationale of unfairness to plaintiff which supports an allowance of fees.

*Neal*, 141 Cal.App.3d at 539.

¶32 While *Neal* involved state statutes and federal regulations not at issue here, its reasoning in regard to the common fund doctrine is instructive. Like the county in *Neal*, the State Fund receives a benefit, but that, without more, is an insufficient basis for application of the doctrine. The State Fund's benefit is one provided by a state statute which creates a creditor's claim, which the Fund and Flynn sought to negotiate. The Court's holding infringes upon that statute, because it deprives the State Fund from collecting the full 50 percent of Flynn's federal award authorized therein.

¶33 The common fund doctrine is "rooted in the equitable concept[] of quasi-contract." *Murer*, 283 Mont. at 222, 942 P.2d at 76 (quoting *Means v. Montana Power Co.* (1981), 191 Mont. 395, 403, 625 P.2d 32, 37). It is applied in cases involving "principle[s] of representation or agency." *Neal*, 141 Cal.App.3d at 539. Cases involving multiple beneficiaries, active and passive, with common interests in a common fund are appropriate for application of the doctrine. *See Rausch, Fisch and Frost v. State Compensation Insurance Fund*, 2002 MT 203, ¶ 48, 311 Mont. 210, ¶ 48, 54 P.3d 25, ¶ 48.

¶34 The Court's merger of the common fund doctrine with the statute at issue here is error. Further, the Court's holding divorces the doctrine from its fundamental precepts. Arguably, the doctrine is now applicable to virtually anyone deriving a financial benefit from a claimant's settlement or award. That was not, and is not, the purpose of the doctrine.

14

¶35    I would affirm the Workers' Compensation Court, which would keep our case law on this issue consistent, as established in *Stahl*.

_____
                    Justice

Chief Justice Karla M. Gray joins in the foregoing concurring and dissenting opinion of Justice Rice.

_____
                Chief Justice